**Pooran and Mohammad AKBARIN, Petitioners,**

**v.**

**IMMIGRATION AND NATURALIZATION SERVICE, Respondent.**

**No. 80–1790.**

United States Court of Appeals, First Circuit.

Argued Nov. 5, 1981.

Decided Feb. 3, 1982.

Ruth M. Diaz, Winthrop, Mass., for petitioners.

Daniel E. Fromstein, Atty., Dept. of Justice, Washington, D. C., with whom Lauri Steven Filppu, Atty., Dept. of Justice, Washington, D. C., was on brief, for respondent.

Before DAVIS,* Judge, CAMPBELL and BOWNES, Circuit Judges.

BOWNES, Circuit Judge.

Mohammad Akbarin and his wife, Pooran Akbarin, petition us to review an order of the Board of Immigration Appeals (BIA) dismissing their appeal from an immigration judge's decision finding them deportable and granting them voluntary departure. The immigration judge found petitioners deportable under 8 U.S.C. § 1251(a)(9)[1] for failing to maintain nonimmigrant status under 8 U.S.C. § 1101(a)(15)(F). The immi-

gration judge found that petitioners so failed because Akbarin had accepted employment without obtaining the authorization form required under 8 C.F.R. § 214.-2(f)(6). We must determine whether the refusal of the immigration judge to allow evidence purporting to prove that an INS official had orally authorized Akbarin's employment was an error of such nature as to require either reversal or a new hearing. We have jurisdiction under 8 U.S.C. § 1105a(a).

Petitioners are Iranians who were admitted to the United States as nonimmigrant aliens, Akbarin as a student, see 8 U.S.C. § 1101(a)(15)(F)(i), and Mrs. Akbarin as his spouse, see 8 U.S.C. § 1101(a)(15)(F)(ii), whose status depends on that of her husband. Akbarin has been pursuing an undergraduate course of study in civil engineering at Northeastern University. In order to maintain his student status, Akbarin is required to meet a number of conditions set out in 8 U.S.C. § 1101(a)(15)(F) and 8 C.F.R. § 214.2(f). Among the conditions is the following:

A nonimmigrant who has a classification under section 101(a)(15)(F)(i) of the Act [8 U.S.C. § 1101(a)(15)(F)(i) ] is not permitted to engage in off-campus employment in the United States, either for an employer or independently, unless all of the following conditions are met: (i) The student is in good standing as a student who is carrying a full course of studies as defined in subparagraph (1a) of this paragraph [8 C.F.R. § 214.2(f)(1a) ]; (ii) the student has demonstrated economic necessity due to unforeseen circumstances arising subsequent to entry or subsequent to change to student classification; (iii) the student has demonstrated that acceptance of employment will not interfere with his/her carrying a full course of

---

* Of the United States Court of Claims, sitting by designation.

1. 8 U.S.C. § 1251(a)(9) provides in pertinent part as follows:

Any alien in the United States ... shall, upon the order of the Attorney General, be deported who—

. . . .

(9) was admitted as a nonimmigrant and failed to maintain the nonimmigrant status in which he was admitted or to which it was changed pursuant to section 1258 of this title, or to comply with the conditions of any such status[.]

study; (iv) the student has agreed that employment while school is in session will not exceed 20 hours per week; and (v) the student has submitted to an authorized official of a school approved by the Attorney General a form I–538, and this form has been certified by that official that all the aforementioned requirements have been met. The authorized official of the school will submit the certified form I–538 containing his recommendation together with the student's form I–94 to the Service office which has jurisdiction over the place where the school is located. The student has permission to accept employment when he/she receives the form I–94 endorsed by the Service to that effect.

8 C.F.R. § 214.2(f)(6).

Akbarin worked as a busboy at the Boston Park Plaza Hotel (the Hotel) from April 25, 1980 to May 16, 1980. He did not file the form I–538 as required by 8 C.F.R. § 214.2(f)(6). Akbarin, however, alleges the following facts as the reason he failed to file the form. On April 25, 1980, he went to the Hotel to inquire about the availability of employment and spoke with the Hotel's Director of Personnel, Paul R. Staffier. He told Staffier that he was an Iranian student. With Akbarin present, Staffier then telephoned the INS to find out whether Akbarin was eligible to work. An unidentified official told Staffier that Akbarin was authorized to work up to twenty hours per week and that he could put Akbarin to work. Staffier then related the conversation to Akbarin and offered him a position as a busboy at $3.70 an hour for twenty hours or less per week.

Akbarin began work that day and held the job until May 16, 1980, when an Order to Show Cause and Notice of Hearing and an arrest warrant were issued against him for failure to maintain status by accepting unauthorized employment at the Hotel. The INS apparently issued these papers on the basis of a letter, also received May 16, 1980, from Staffier stating that Akbarin had been employed as a busboy at the Hotel since April 25, 1980. A similar Order and Notice was issued against Mrs. Akbarin on May 27, 1980.

At the hearing before the immigration judge, the Government introduced the letter from Staffier and the two forms I–538 that Akbarin had completed in August and December, 1979, neither of which sought permission for employment. In defense, Akbarin sought to testify about the alleged oral authorization of employment given in the telephone conversation between Staffier and the INS and moved for a subpoena to compel Staffier's testimony about the conversation. The immigration judge refused to allow Akbarin to testify about the oral authorization and denied the motion for subpoena on the ground that the evidence sought to be introduced was irrelevant because Akbarin could have obtained authorization for employment only by submitting a form I–538 to the INS. The immigration judge found that the other evidence met the "clear, unequivocal, and convincing" test of *Woodby v. INS*, 385 U.S. 276, 285–86, 87 S.Ct. 483, 487–88, 17 L.Ed.2d 362 (1966). The Akbarins were declared deportable and granted voluntary departure.

On appeal to the BIA, the Akbarins argued that they were denied procedural due process because Akbarin was unable to testify about the telephone call and because the subpoena for Staffier was denied. They also contended that the INS was estopped because of the alleged oral authorization from asserting that Akbarin was not authorized to work. The BIA upheld the immigration judge's decision, refusing to accept petitioners' due process claim on the ground that the evidence sought to be introduced was irrelevant and rejecting the estoppel argument because there was no "affirmative misconduct" by the INS and because Akbarin knew that he had to file form I–538 in order to obtain employment authorization.

We must uphold the decision of the immigration judge if the hearing before him was fair, if there was evidence to support his findings, and if he committed no error of law. *Kessler v. Strecker*, 307 U.S.

22, 34, 59 S.Ct. 694, 700, 83 L.Ed. 1082 (1939); *Castaneda-Delgado v. INS*, 525 F.2d 1295, 1299–1300 (7th Cir. 1975) (citing cases). The fair hearing and sufficient evidence standards are also recognized by statute, 8 U.S.C. § 1252(b).

The immigration judge's refusal to allow *any* evidence of an oral authorization by an INS official was based on relevancy. The sole purpose of the evidence was to assert an estoppel claim against the Government. If such a claim of estoppel could be made as a matter of law, then exclusion of the evidence was error. Petitioners' due process argument, assertedly based on *Wong Yang Sung v. McGrath*, 339 U.S. 33, 70 S.Ct. 445, 94 L.Ed. 616 (1950), and *Bridges v. Wixon*, 326 U.S. 135, 65 S.Ct. 1443, 89 L.Ed. 2103 (1945), is only another way of saying that they have a valid claim of equitable estoppel against the Government that they were not allowed to make. The estoppel claim is that the INS induced Akbarin to change his position or that Akbarin reasonably relied on INS statements that caused him to change his position, either of which estops the INS from deporting him and his wife.[2] Although stating the claim is simple, determining whether it can be upheld is not without difficulty.

■ The traditional doctrine of equitable estoppel does not apply fully in cases of estoppel against the Government. For the Government to be estopped, it is necessary not only that a party have relied on the Government's conduct—the basis of the traditional doctrine—but also that the Government have engaged in "affirmative misconduct." In its most recent analysis of estoppel against the Government, the Supreme Court held that a Social Security Administration official's oral advice to the plaintiff that she was ineligible for certain benefits when in fact she was did not estop the

Government from denying her retroactive benefits for which she did not apply in time because of the oral advice. The decision seems to rest on two grounds: one, that no misconduct occurred because the official's error was only a misinterpretation of the nonbinding Social Security Claims Manual; and, two, that no reasonable reliance occurred because the plaintiff could have corrected the error by filing a written application. *Schweiker v. Hansen*, 450 U.S. 785, 101 S.Ct. 1468, 67 L.Ed.2d 685 (1981) (per curiam). Even when affirmative misconduct and reasonable reliance occur, however, it is not clear that the Government should be estopped. The Supreme Court indicated that if estoppel would threaten the public fisc, courts should apply estoppel cautiously. *Id.* at 788 & n.4, 101 S.Ct. at 1471 & n.4. This court has not had frequent occasion to address the question, but in a case involving both tax and citizenship issues, we observed in dictum that where the appellant had severed her ties to the United States at the direction of the State Department (and lost the protection of the United States), the Government was estopped from taxing her income in the following years. *United States v. Rexach*, 558 F.2d 37, 43 (1st Cir. 1976).[3]

In immigration cases, the state of the doctrine of estoppel against the Government is difficult to determine. "In two cases involving denial of citizenship, the [Supreme] Court has declined to decide whether even 'affirmative misconduct' would estop the Government from denying citizenship, for in neither case was 'affirmative misconduct' involved." *Schweiker v. Hansen*, 450 U.S. at 788, 101 S.Ct. at 1470–71, 67 L.Ed.2d 685, citing *INS v. Hibi*, 414 U.S. 5, 8–9, 94 S.Ct. 19, 21–22, 38 L.Ed.2d 7 (1973) (per curiam), and *Montana v. Kennedy*, 366 U.S. 308, 314–15, 81 S.Ct. 1336,

---

**2.** The only difference between the due process and estoppel arguments is the remedy sought. If the immigration judge's evidentiary rulings were incorrect, we must remand the case for a new hearing to take into account the excluded evidence. Alternatively, we might find on the record before us that the INS is estopped and simply overturn the immigration judge's order.

**3.** More recently, in *Precious Metals Assocs. v. CFTC*, 620 F.2d 900, 908–09 (1st Cir. 1980), we held that even under a liberal estoppel doctrine, the Government's conduct there—failure to respond to inquiries—did not warrant application of estoppel.

1340–41, 6 L.Ed.2d 313 (1961). *See also Moser v. United States*, 341 U.S. 41, 47, 71 S.Ct. 553, 556, 95 L.Ed.2d 729 (1951) (no need to evaluate facts on basis of estoppel of Government). *Hansen* itself is not otherwise helpful here because the decision seems to rest to some degree on the fact that the estoppel "threaten[ed] the public fisc." 450 U.S. at 788 n.4, 101 S.Ct. at 1471 n.4, 67 L.Ed.2d 685. The immigration question in this case does not. In addition, the alleged error by the INS in the instant case was a misinterpretation of a binding federal regulation, not of a nonbinding one as in *Hansen*.

Some federal courts of appeals have stated that reliance on affirmative misconduct by the Government may create an estoppel against the Government in immigration cases. *See Corniel-Rodriguez v. INS*, 532 F.2d 301, 306–07 (2d Cir. 1976); *de Hernandez v. INS*, 498 F.2d 919, 921 (9th Cir. 1974) (per curiam). Other decisions have held against the Government on what amounts to an estoppel theory without actually mentioning estoppel. *See Mashi v. INS*, 585 F.2d 1309, 1315 (5th Cir. 1978); *Tejeda v. INS*, 346 F.2d 389, 392–94 (9th Cir. 1965); *McLeod v. Peterson*, 283 F.2d 180, 187 (3d Cir. 1960). Although this "reliance-on-misconduct" rule serves the useful function of balancing the interest of the United States as a sovereign controlling its borders against the interest of individuals, it has led to unproductive efforts to define "affirmative misconduct," *Santiago v. INS*, 526 F.2d 488, 492–93 (9th Cir. 1975) (in banc), *cert. denied*, 425 U.S. 971, 96 S.Ct. 2167, 48 L.Ed.2d 794 (1976); Note, Equitable Estoppel of the Government, 79 Colum.L.Rev. 551, 559 (1979). For example, probably because the Ninth Circuit held that delay by the INS amounted to affirmative misconduct, *Miranda v. INS*, 638 F.2d 83, 84 (9th Cir. 1980), the Supreme Court vacated the judgment and remanded the case for reconsideration in light of *Hansen*, —— U.S. ——, 102 S.Ct. 81, 70 L.Ed.2d 77 (1981). On the other hand, failure to perform a legally required task has been found to amount to affirmative misconduct. *Corniel-Rodriguez v. INS*, 532 F.2d at 306–07.

Nevertheless, in most of the cases where estoppel is raised, the decision has turned on whether affirmative misconduct occurred, the court usually finding that it did not. *See Oki v. INS*, 598 F.2d 1160, 1161–62 (9th Cir. 1979) (per curiam); *Hamadeh v. INS*, 343 F.2d 530, 532–33 (7th Cir.), *cert. denied*, 382 U.S. 838, 86 S.Ct. 85, 15 L.Ed.2d 80 (1965). The facts in a number of these cases, however, suggest that it would have been at least equally sound for the court to decide estoppel did not apply on the ground that no reasonable reliance occurred, that is, that the Government's conduct was not intended nor reasonably could have been expected to induce reliance. *See Wong Kwok Sui v. Boyd*, 285 F.2d 572, 574–75 (9th Cir. 1960) (issuance of citizen identification card does not estop INS; petitioner showed no reliance on card); *de Hernandez v. INS*, 498 F.2d at 921 (grant of permanent resident status not affirmative misconduct creating estoppel; petitioner showed no reliance); *Manguerra v. INS*, 390 F.2d 358, 360 (9th Cir. 1968) (alleged oral permission from INS to remain in United States does not amount to estoppel; no reliance shown). Few cases have actually been decided on the reliance issue, *but see Talanoa v. INS*, 397 F.2d 196, 201 (9th Cir. 1968) (assuming Government may be estopped, no estoppel because no reliance on Government action).

We believe that the soundest method for analyzing a claim of estoppel against the Government in an immigration case is to make two principal inquiries: whether the Government's action was error, and, if the complaining party reacted to the error, whether the action was intended to or could reasonably have been intended to induce reliance. The second inquiry is strict: in immigration cases where the Government has been estopped, the Government misconduct must have induced the petitioner to act in a way that he would not otherwise have. *See, e.g., Corniel-Rodriguez v. INS*, 532 F.2d at 306; *cf. Mashi v. INS*, 585 F.2d at 1315; *Tejeda v. INS*, 346 F.2d at 392–94; *McLeod v. Peterson*, 283 F.2d at 187. Thus a probability that an individual would have acted even without the Govern-

ment's misconduct may bar an assertion of estoppel. We also think that *Hansen* requires that reasonable reliance includes exhaustion of opportunities to correct the Government's error or lack of such opportunities. In *Hansen* the respondent had an opportunity to correct the error by filing a written application and did not do so.

Two sets of secondary factors may also affect the decision. First, there are the constitutional and policy considerations that constitute the doctrine of separation of powers. By estopping the Government we may, in effect, be validating an incorrect interpretation of the law, thereby frustrating the intent of Congress in enacting the statute. Note, *supra*, 79 Colum.L.Rev. at 565–66. Nor do we wish to intrude on the executive's ability to promote important federal policies by enforcing the law. *See* Note, Never Trust a Bureaucrat: Estoppel Against the Government, 42 So.Cal.L.Rev. 391, 398 (1969). Where Government misconduct and the subsequent reliance thereon operate to deny a benefit that might otherwise be available, estopping the Government will not present these problems. Second, other doctrines of equity may militate against application of estoppel, itself an equitable doctrine, in an otherwise appropriate case. *See Corniel-Rodriguez v. INS*, 532 F.2d at 306 (equities must always be weighed carefully). Petitioner's unclean hands, for example, may preclude him from asserting estoppel against the Government. *United States ex rel. Circella v. Sahli*, 216 F.2d 33, 40 (7th Cir. 1954), *cert. denied*, 348 U.S. 964, 75 S.Ct. 525, 99 L.Ed. 752 (1955) (one reason INS not estopped from deporting petitioner is that petitioner concealed facts from INS).[4]

■ Turning to the instant case, we examine the facts in the record and as alleged to determine whether the INS erred (or might have erred) and whether Akbarin relied reasonably (or might have so relied) on the error. The record contains no evidence of error by the INS, but Akbarin has alleged that an INS official gave incorrect advice to Staffier who immediately passed it on to Akbarin. Evidence of reliance is similarly lacking in the record, but Akbarin has also alleged that Staffier told him that the INS official said that employment was permissible and that, as a result, he started work the same day. The BIA, however, found that directions on immigration forms that Akbarin had completed earlier gave him knowledge of the employment authorization regulation, notwithstanding Staffier's telephone call to INS, so Akbarin could not have relied on the call.

We conclude that Akbarin has alleged facts that, if proven, might estop the Government from asserting that he had failed to comply with 8 C.F.R. § 214.2(f)(6). As we understand petitioners' proffers of Akbarin's and Staffier's testimony, Akbarin and Staffier, as a result of the telephone conversation with the INS official, could and did reasonably believe (and acted accordingly) that Akbarin did not have to file any form in order to work for the Hotel and that Akbarin could be put to work immediately. Having started work, Akbarin could not cure the problem (unlike the respondent in *Hansen*) by filing form I–538 because his employment had already rendered him deportable and because late filing of form I–538 would not change that status. The Government, to be sure, points out that Akbarin had earlier completed immigration forms which would have advised him of the

---

**4.** Judge Campbell does not join in the analysis of estoppel against the Government found in this and the preceding paragraph. He believes such a comprehensive analysis to be unnecessary to this decision. While full-scale legal analysis might later be required after the facts are established, this will be so only if Akbarin makes a persuasive factual showing, and the analysis can then be narrowed to those particular facts. Moreover, it is possible that Akbarin's showing will be so deficient as to obviate

the need for extended analysis. The Supreme Court itself has hesitated to explore this thorny and difficult topic in detail. *See Schweiker v. Hansen*, 450 U.S. 785, 101 S.Ct. 1468, 67 L.Ed.2d 685 (1981) (per curiam). Judge Campbell thinks this court should be slow to say any more than required about a doctrine which must be applied with utmost restraint to avoid permitting the common errors and misstatements of government employees from abrogating duly enacted statutes and regulations.

need to file a form I–538 in these circumstances. Also, it can be argued with some force that being told (as Akbarin claims) that he could start work right away, was not the equivalent of being told he could dispense with filing an I–538. But these are arguments which cannot be fully evaluated except after evidence has been presented from which a finding can be made as to what precise conversation, if any, took place.[5] Only in light of such conversation can it be determined whether Akbarin reasonably relied on improper information provided by an INS official. And only in light of precise factual findings as to what actually took place can a meaningful determination of the legal aspects of the estoppel claim be made.

This case does not present compelling reasons not to subject the Government to estoppel. Estoppel here would not interfere unduly with the operation of the immigration laws. If the INS had informed Staffier and Akbarin correctly about the employment authorization regulation, Akbarin presumably could have complied with the regulation and still obtained employment at the Hotel. In addition, the regulation serves principally administrative purposes—it does not, for example, prohibit nonimmigrant alien students from working—so the application of estoppel would not hinder achievement of important federal immigration goals. Finally, the INS has raised no equitable defenses that would preclude the petitioners from seeking application of the doctrine of equitable estoppel.

We make no final ruling on whether Akbarin's estoppel claim is or is not valid. We do hold that the immigration judge denied petitioners a fair hearing by failing to admit the evidence of Akbarin's estoppel defense and committed an error of law by excluding that evidence on the basis of relevancy. We therefore vacate the order and remand the case for a new hearing so that petitioners can present their estoppel claim.

**5.** Petitioners argue that the INS is estopped from claiming that Akbarin was aware of the employment authorization regulation, but in

Petitioners' argument that the INS did not meet its burden of proof has merit only insofar as it restates their estoppel argument.

*Petition granted; order vacated and case remanded.*

view of the strictness of the reliance requirement, we reject this argument.