**SEABOARD SURETY COMPANY,**
**Plaintiff**
**V.**
**WINNONA ANDREWS, ET AL,**
**Defendants**

**No. 79-418-MA**

United States District Court
Commonwealth of Massachusetts

**August 24, 1982**

James J. Moran, Jr., counsel for Seaboard Surety Co.

Ronald F. Kehoe, Esq., counsel for Seaboard Surety Co.

Richard T. Tucker, Esq., counsel for Winnona Andrews.

Richard J. Bennett, Esq., counsel for Ernest Andy, Jr.

Albert Arrell, defendant.

Edmund Burke, counsel for Charles Boudreau.

Anthony Capozzi, defendant.

Gerald Gray, counsel for Joseph Catanzariti.

Allen G. Chambers, defendant.

Anita Colvario, defendant.

William R. Cote, defendant.

Roy Curry, defendant.

Rober D'Amelio, defendant.

Michael Flaherty, counsel for James Downey.

William A. Dufresne, defendant.

Pasquale Esposito, defendant.

Michael D. Greenberg, counsel for Cecil Farnsworth.

John L. Fleck, defendant.

Edward Galvin, defendant.

Thomas J. Donoghue, counsel for Stella Garvey.

Thomas Gibson, counsel for Alex Hayes.

Christian J. Stier, counsel for William Hennigan.

Robert Hill, defendant.

Charles M. Crowley, counsel for Louis Ianelli.

Charles Kostos, defendant.

Thomas J. Donoghue, counsel for Joseph Kwolek.

George E. La Mothe, defendant.

Michael J. Manfra, defendant.

Robert Marks, defendant.

Robert J. McBrine, defendant.

William McManus, defendant.

Bernard J. Conlin, counsel for Thomas McMahon.

Alfred Mendella, defendant.

Henry Malis, counsel for Robert R. Morin.

John J. George, counsel for Arthur Mulhearn.

Kenneth Nadeau, defendant.

Bernard J. Conlin, counsel for Richard W. Nichols.

Edmund Burke, counsel for Walter V. Novak.

Stephen J. Kehoe, counsel for John E. O'Brien.

George W. Leary, counsel for Marion A. Osowski.

Leonard J. Pearless, defendant.

Joseph Provensano, defendant.

Tina Pulisciano, defendant.

Edward L. Donnellan, counsel for Henry Reynolds.

William Rogers, defendant.

Anthony Rocks, defendant.

Richard Ross, defendant.

James Ryan, defendant.

Robert Stone, defendant.

William H. Troupe, counsel for Sophie Styzinski.

Charles M. Crowley, Jr., counsel for Patrick Sullivan.

William Sullivan, defendant.

Richard Yates, defendant.

Frederick T. Golder, counsel for Joseph Wilkins.

William T. Salisbury, counsel for Henry Wilkins.

COMM. OF MASS., Defendant.

Kevin M. Kirrane, counsel for Division of Industrial Accident.

## MEMORANDUM AND ORDER

**Mazzone, D.J.** This is the final phase of this matter. The plaintiff, Seaboard Surety Company (Seaboard), issued a surety bond to Associated Transport, Inc. (Associated) permitting Associated to comply with the Massachusetts Workman's Compensation Act, M.G.L. c. 152, sec. 52A. The status of that bond, issued November 15, 1975 with a penal sum of $270,00, is in dispute in this suit.[1]

---

[1] On February 3, 1982, this Court granted Seaboard's motion for partial summary judgment by declaring Seaboard's liability was limited as a matter of law to the $270,000 face value of the 1975-1976 surety bond and that the various defendants had no rights against Seaboard under any earlier bond.

The defendant, the Commonwealth of Massachusetts (Commonwealth), asserted a counterclaim against Seaboard for the value of the bond. Both parties have moved for summary judgment on the counterclaim. Fed.R.Civ.P. 56. The record has been supplemented by depositions and opposing memoranda of law.

The essential facts are undisputed. The face amount of the bond was $270,000. Seaboard's obligation to pay the bond arose May 4, 1976 when the Commonwealth revoked Associated's self-insurance license in light of a judgment of bankruptcy. Seaboard did not pay the bond to the Commonwealth. Nor, prior to this claim, did the Commonwealth request payment. Rather, according to Seaboard, payments of $250,281.14 (of which $32,505.54 was offset by lien recoveries) were made to Associated's employees injured prior to April 28, 1976. The remaining $52,224.40 was paid into the registry of this Court in this interpleader action. The Commonwealth's counterclaim seeks payment of the full $270,000. The central issue, therefore, is whether equity permits the Commonwealth to collect the full amount in light of Seaboard's payments. I conclude that it does not. The equitable doctrine of estoppel precludes recovery by the Commonwealth.

The threshold question is whether estoppel may apply against a government, such as the Commonwealth. As a general matter estoppel is not favored, particularly against agencies administering public duties. See **United States v. Mallet**, 294 F. Supp. 761 (D. Mass. 1968); **Doris v. Police Commissioner of Boston**, 374 Mass. 443 (1978); **Sweeney v. Frew**, 318 Mass. 595 (1945). The general policy behind not permitting estoppel against government agencies is articulated in **Doris:**

> The plaintiff's claim, nevertheless, is that the lack of enforcement of the statute induced Boston police officers to purchase homes in cities and

towns surrounding Boston on the presumption that sec. 99A was a 'dead letter.' It would indeed be a most serious consequence if we were to conclude that the inattention or inactivity of government officials could render a statute unenforceable and thus deprive the public of the benefits or protections bestowed by the Legislature. The plaintiff cites no decision of this court that would support his position in this regard. The public interest in the enforcement of the laws of the Commonwealth cannot be defeated by failures of public officials to perform their duties. See **Building Inspector of Lancaster v. Sanderson, supra; New City Hotel Co. v. Alcoholic Beverages Control Comm'n,** 347 Mass. 539, 542 (1964) (estoppel may not be invoked because of action of officials if result is to defeat operation of statute).

**Doris v. Police Commissioner of Boston,** 374 Mass. at 449. **See also Akbarin v. Immigration and Naturalization Service,** 669 F.2d 839, 842 (1st Cir. 1982).

The policy stated in **Doris** would not be served by immunizing the Commonwealth from the reach of equity here. Estoppel would not thwart the operation of the statute. There is no dispute that the individuals ultimately entitled to the funds received them. The public would not be denied the benefits and protections of this statute if Seaboard's liability was limited to the amount it agreed to pay, $270,000. Seaboard, unlike the police officers in **Doris** or the "owner" of the expired but unrevoked liquor license in **New City Hotel,** gained no advantage by paying the beneficiaries directly. Thus, defendant's status as a government body is not sufficient to act as a bar to an otherwise proper application of the doctrine of estoppel.

The elements of equitable estoppel are well established:

(1) A representation or conduct

amounting to a representation intended to induce a course of conduct on the part of the person to whom the representation is made. (2) An act or omission resulting from the representation, whether actual or by conduct, by the person to whom the representation is made. (3) Detriment to such person as a consequence of the act or omission.

**Cellucci v. Sun Oil Company,** 320 N.E.2d 919, 923 (Mass. 1974) **aff'd** 331 N.E.2d 813.

The only element in dispute here is whether the actions, statements or omissions of the Commonwealth induced Seaboard to make the payments itself rather than having the Commonwealth accept the bond and make the compensation disbursements. It is undisputed that the Commonwealth did not demand immediate payment of the bond, nor did it threaten to bring suit to recover the bond. The counterclaim for recovery was pressed well after Seaboard's conduct became apparent. The Commonwealth also never indicated its disapproval of the payments and was fully aware that they were being made. In fact, the Commonwealth participated in discussions concerning those payments and indicated only that it would not permit lump sum dispositions.

Mr. Thomas Starr, Managing Attorney in the Law and Claim Department of Seaboard, and Mr. Robert Merullo, Director of the Office of Self Insurance of the Industrial Accident Board, spoke frequently about the payment plan. Merullo relayed his information to the members of the Board.

Although Merullo's memory was not complete his testimony at deposition was sufficient to indicate that the Commonwealth should be estopped from collecting the $270,000. Failure of memory does not raise an issue of fact. Merullo was aware that Seaboard had no intention of paying anything in excess of the $270,000. **Merullo Dep.** at 21. He was also aware that payment was being made directly to the claimants by Seaboard. **Id.** at 58-9. Although disclaiming any order directing payments, Merullo recalls telling Starr not to make any lump payments, **id.** at 66, in order to get as much money as possible to the claimants. **Id.** at 67. He also discussed the lump sum payments with some members of the Board. **Id.** at 70-6. Although this was a unique situation, Merullo never objected to the payments and saw nothing wrong with them. **Id.** at 69. Due to Merullo's communications, the Board was aware of the Seaboard payments and that the payments were dwindling the penal sum. **Id.** at 84-5. It is clear from this course of conduct that the assistance given by Merullo and the failure to object at any time, induced Seaboard to make the payments. The only reasonable conclusion that Seaboard could reach when it was informed not to make lump sum payments was that the payments it was already making were entirely proper, as Merullo believed they were.

The deposition testimony of Starr is consistent with Merullo's. Starr did not make the payments **solely** in reliance on Merullo. **Starr Dep.** at 22. Rather, like Merullo, Starr simply believed it was the right thing to do under the circumstances to avoid interruptions to the claimants. **Id.** This was entirely consistent with the procedure followed in other states. **Id.** at 18. At all times, Seaboard believed that they were simply discharging their obligation under the bond, **id.** at 29, and could not possibly be liable for an amount greater than the face value of the bond. **Id.** at 31-32. The Commonwealth did nothing but reinforce this view with its silence.

If the Commonwealth wished Seaboard to stop making direct payments, it had the obligation to indicate this when the facts became known. At the very least, the Commonwealth had the obligation not to participate in the payments by forbidding certain types but not others. If the Commonwealth was totally uninvolved this would be a different case. However,

by forbidding one type of payment the Commonwealth explicitly encouraged Seaboard to continue making the other payments. The Commonwealth cannot now be heard to say that further payment of the bond is owing.

There are other doctrines, none of them raised by the parties, that may well provide alternative bases for reaching this equitable result. See e.g. **In re D. Federico Co., Inc.**, 8 B.R. 888, 897 (D.Mass. 1981) ("unjust enrichment"); **Pioneering Insulating and Modernization Corp. v. N.E. Tel & Tel Co.**, 56 Mass. APP. Dec. 128 (1975) ("mutual mistake"); **In re Shawsheen Dairy**, 47 F. Supp. 494 (D.Mass. 1943) ("quasi-contract"). However, these alternate theories need not be addressed since they are all founded on the fundamental principles of equity that underly the analysis in this case.

Accordingly, the plaintiff's motion for summary judgment on the defendant's counterclaim is granted. The defendant's corresponding motion is denied.

SO ORDERED.

A. David Mazzone
United States District Judge