George H. HARRISON, Debtor.

George H. HARRISON, Appellant,

v.

UNITED STATES DEPARTMENT OF
INTERNAL REVENUE, Appellee.

No. CIV.A. 96–12227–DPW.

United States District Court,
D. Massachusetts.

Aug. 14, 1997.

Timothy J. Burke, Cohen & Burke, Brain-tree, MA, for Appellant.

Henry J. Riordan, U.S. Department of Justice, Washington, DC, for Appellee.

*MEMORANDUM AND ORDER*

WOODLOCK, District Judge.

Debtor–Appellant, George Harrison appeals a determination of the Bankruptcy Court that a debt owing to the Internal Revenue Service was not dischargeable pursuant to § 523(a)(1)(B)(ii) of the Bankruptcy Code because the operative tax return was filed more than two years before Harrison filed his bankruptcy petition. Harrison contends that the Internal Revenue Service should be equitably estopped from opposing the discharge of Harrison's 1987 income tax because an IRS employee allegedly instructed Harrison to file his return through the mail. The United States, to the contrary, contends the Bankruptcy Court correctly determined any estoppel theory to be unavailing and that evidence concerning it would be, consequently, inadmissible.

Reviewing the Bankruptcy Court's determination *de novo*, I find that the decision was not an error and did not constitute an abuse of discretion.

**I**

The underlying facts leading up to this case are essentially undisputed and are as follows.

Harrison failed to file his 1987 federal income tax return by April 15, 1988, the date upon which he was required to make his return. (Appellant's Memo, at 3.) Harrison's failure to file was apparently due to lack of available funds. (*Id.*) Accordingly, the Internal Revenue Service ("IRS") prepared a substitute return pursuant to 26 U.S.C. § 6020(b) and determined that there was a tax deficiency in the amount of $30,524.00 in respect to Harrison's 1987 tax year. (Appellee's Memo, at 3.) The taxes were assessed on August 12, 1991. (*Id.*)

After the assessment, Harrison was instructed by an unidentified IRS employee to mail his Form 1040 tax return ("return" or "Form 1040") to the Automated Collection System ("ACS") of the IRS's Collection Division. (Appellant's Memo, at 4.) Following this instruction, Harrison mailed his 1987 return to the ACS on May 25, 1992. (*Id.* at 5.) Although there is no independent proof

that Harrison actually mailed the return on that day, the form is dated May 25th and the United States does not contest that it was mailed that day. The ACS, however, did not receive the delinquent Form 1040 until June 2, 1992 at which time it date-stamped the form as received. (Appellee's Memo, at 3.)

On May 25, 1994, Harrison commenced a bankruptcy case under Chapter 7 of the Bankruptcy Code and received a discharge under 11 U.S.C. § 727 on September 7, 1994. (*Id.* at 4.) On November 8, 1995, Harrison commenced an adversary proceeding against the United States in order to determine the dischargeability of his 1987 federal income tax liability. (*Id.*) In his amended complaint Harrison alleged that the IRS should be equitably estopped from opposing the dischargeability of the taxes because the IRS employee had represented to Harrison that "mailing his return to ACS was filing his tax return." (*Id.*) (quoting Amended Complaint ¶ 46.)

Judge Kenner in the Bankruptcy Court held a trial on the adversary complaint on October 16, 1996. At the trial, and now, there was no dispute that Harrison commenced his bankruptcy case on May 25, 1994 or that the IRS received the Form 1040 from Harrison dated May 25, 1992 on June 2, 1992. (*Id.*) Harrison, through counsel, contended at the trial that the IRS represented to him that the act of sending the Form 1040 through the mail was sufficient to deem the form filed. Harrison argued that because of this representation the IRS should be estopped from arguing that the Form 1040 was filed the day it was received rather than the day it was mailed. After receiving Harrison's offer of proof on the estoppel theory, Judge Kenner rejected it and judgment was entered for the United States on October 17, 1996.

**II**

"A district court reviews a bankruptcy court's judgment in the same manner in which [a court of appeals] review[s] lower court proceedings.... Applications of law are reviewed de novo and are set aside only when they are made in error or constitute an abuse of discretion." *Casco Northern Bank.*

*N.A. v. DN Associates,* 3 F.3d 512, 515 (1st Cir.1993) (internal citations and quotations omitted). Accordingly, I will review Judge Kenner's judgment *de novo.*

In a Chapter 7 case, an individual generally receives a discharge from all debts that arose before the commencement of a case. *See* 11 U.S.C. § 727(b).[1] Section 523(a)(1)(B), however, provides an exception for such discharge for taxes with respect to which a return was not filed or was filed late and after two years before the date of the filing of the bankruptcy petition. *See* 11 U.S.C. § 523(a)(1)(B). Section 523 provides, in pertinent part:

(a) A discharge under section 727 ... of this title ... does not discharge an individual debtor from any debt—

(1) for a tax or customs duty—

(B) with respect to which a return, if required—

(i) was not filed; or

(ii) was filed after the date on which such return was last due, under applicable law or under any extension, and after two years before the date of the filing of the petition.

11 U.S.C. § 523(a)(1)(B)(i), (ii). In this case, Harrison contends that he mailed his Form 1040 on May 25, 1992, exactly two years before he filed his Chapter 7 petition and that therefore his 1987 income tax liability should be discharged pursuant to section 523. The United States, to the contrary, argues that Harrison's Form 1040 was filed on June 2, 1992, the date it was received and that therefore, under § 523(a)(1)(B)(ii) it was filed "after two years before the date of the filing of the petition" and is not dischargeable.

 It is well-settled law that generally, a tax return is "filed" on the date that it is received by the United States. *Smith v. United States,* 96 F.3d 800, 801 (6th Cir. 1996). An exception to this rule applies to tax returns mailed with the U.S. Postal Service which are considered received and so "filed" on the date that they are postmarked. *Id.* at 802 (citing *Surowka v. United States,*

909 F.2d 148, 149 (6th Cir.1990)). The "mailbox rule," however, applies only to tax returns that are timely filed. *Id.* (citing *Emmons v. Commissioner,* 898 F.2d 50, 51 (5th Cir.1990)). Because it is undisputed that Harrison's 1987 tax return was filed late, the "mailbox rule" does not apply. I therefore find that Harrison's Form 1040 was filed on June 2, 1992, the date it was received by the ACS. *Accord Pitre v. I.R.S.,* 938 F.Supp. 95, 98 (D.N.H.1996); *Becker v. Dep't of Treasury,* 823 F.Supp. 231, 233 (S.D.N.Y.1993); *United States v. D'Avanza,* 132 B.R. 462, 463–64 (M.D.Fla.1991). Consequently, the tax return was filed less than two years before Harrison filed the Chapter 7 petition and so is not under the general rules dischargeable.

### III

 Despite the seemingly straightforward analysis under the general rules regarding the filing of tax returns, however, Harrison contends that the IRS should be estopped from opposing the dischargeability of his 1987 tax liability. Harrison bases this argument on the contention that the unidentified IRS employee represented to him that his Form 1040 would be filed by mailing it to the ACS at the Collection Division of the IRS. Harrison further contends that this information led him to believe that the return was filed when he sent it on May 25, 1992. At the trial, Judge Kenner requested an offer of proof with respect to what Harrison would offer if he were permitted to pursue his estoppel theory. The following colloquy ensued:

MR. BURKE: He was contacted by the Internal Revenue Service. They had levied his paycheck. They entered into negotiations to put him on a payment agreement, and they also told him to file the tax return with them. Mr. Lamie, who's here, who's Chief of Automated Collection System, will tell the Court, as he has in his deposition, that that is the way returns are filed with ACS. That's the exact term that

---

1. Section 727(b) states, in pertinent part:
(b) Except as provided in section 523 ... a discharge under subsection (a) of this section discharges the debtor from all debts that arose before the date of the order for relief....
11 U.S.C. § 727(b).

he used. The return is filed by ACS by the mailing.

So the whole issue before the Court is whether the IRS by telling taxpayers to file the returns with ACS through the mail is collaterally estopped from maintaining before this Court that Section 523 and all other subsections precludes the IRS—precludes Mr. Harrison from getting a discharge.

THE COURT: No. From getting—not from getting the discharge; from having his 1987 tax liability discharged under Section 523.

MR. BURKE: Thank you.

THE COURT: He got his discharge under 717, I assume.

MR. BURKE: I'm not a bankruptcy attorney, Your Honor.

THE COURT: Okay. Okay. He got his discharge, though, didn't he?

MR. BURKE: Yes, he did.

THE COURT: Yeah, okay. All right. Okay. Based on your representation that that's going to be your offer of proof, I'm rejecting your argument, your theory of collateral [sic] estoppel. It—it's not—it doesn't make sense in the context of this dispute. The—based on what you've told me, there's no—the United States didn't give erroneous information or mislead the debtor. There was simply—he was told, as most taxpayers do, you file your return, you put it in the mail. The issue here, as I see it, at least as a threshold, is whether the tax return was filed within the meaning of Section 523(a)(1)(B)(ii) within two years or beyond two years. So am I correct that there are no disputes on these facts? There's no dispute that the debtor filed—failed to file his 1987 tax return on time, correct?

MR. BURKE. No, there's not.

(Tr. 15–17) (Appellant's App., at 95–97) (Docket No. 4.) After this colloquy[2] Judge Kenner rejected Harrison's estoppel argument determining that at most Harrison was told to file his tax return by putting it in the mail. (*Id.* at 17.) This statement is not the equivalent of representing to Harrison that the return would be filed for bankruptcy law purposes on the day it was mailed. Accordingly, even if established, the fact that an IRS employee told Harrison to mail his return to the ACS is not supportive of the contention Harrison's 1987 tax liability was dischargeable.

## IV

Had Judge Kenner allowed in Harrison's evidence supporting his estoppel theory, I would still find that Harrison had not made out even a prima facie case of equitable

2. In the interest of completeness, I must note briefly that Harrison's characterization of his claim as one raising constitutional due process clause issues is overdrawn. Harrison is correct that due process requires that a hearing must be fair and full before an impartial tribunal. *See Mathews v. Eldridge,* 424 U.S. 319, 333, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). It is also correct that, under certain circumstances, litigants must be afforded the opportunity to offer evidence in support of their arguments. *Id.* at 333–34, 96 S.Ct. 893; *Equal Employment Opportunity v. Steamship Clerks Union, Local 1066,* 48 F.3d 594, 609 (1st Cir.), *cert. denied,* 516 U.S. 814, 116 S.Ct. 65, 133 L.Ed.2d 27 (1995). These rights, however, are not self-executing; "due process, unlike some other legal rules, is not a technical conception with a fixed content unrelated to time, place and circumstance." *Mathews,* 424 U.S. at 334, 96 S.Ct. 893 (internal quotations and citation omitted). Accordingly, "due process does not necessarily require any particular kind of hearing." *Steamship Clerks Union,* 48 F.3d at 609. In the present situation I find that Harrison received the process he was due. Judge Kenner requested an offer of proof regarding Harrison's estoppel theory, *i.e.,* she asked Harrison's attorney to tell her what evidence Harrison would submit in support of this theory. Only after receiving the proffer and questioning Harrison's attorney did Judge Kenner reject the estoppel theory. The attention paid by Judge Kenner to this determination distinguishes the present case from *Moore v. California Minerals Products Corp.,* 115 Cal.App.2d 834, 252 P.2d 1005, (Cal. Dist.Ct.App.1953), cited by Harrison in support of his due process theory. In *Moore,* the court ruled at the close of opening statements without any further questioning of the parties. In reversing the trial court's ruling, the Court of Appeal for California stated that "[t]he law favors the trial of causes on the merits. It hears before it condemns, and even though a litigant be present to deny him the right to speak is no better than to judge him in absentia." *Id.* 252 P.2d at 1007. In the present case, Harrison was not denied the right to speak. In fact, it was only after Harrison's right to speak had been exercised that Judge Kenner made her determinations.

estoppel against the United States. The traditional elements of equitable estoppel are: first, a material misrepresentation of a party who had reason to know of its falsity; second, reasonable reliance upon the misrepresentation; and third, some disadvantage to the party seeking to assert estoppel fairly traceable to this misrepresentation.

*Falcone v. Pierce,* 864 F.2d 226, 228 (1st Cir.1988). It is apparent that Harrison could not satisfy these traditional elements,[3] Moreover, Harrison must offer additional proof because his estoppel claim is against the government and the " 'traditional doctrine of equitable estoppel does not apply fully in cases against the government.' " *United States v. Ven–Fuel, Inc.,* 758 F.2d 741, 761 (1st Cir.1985) (quoting *Akbarin v. I.N.S.,* 669 F.2d 839, 842 (1st Cir.1982)). Indeed, judicial resistance to the application of equitable relief for those in litigation with the government is applied with special force in the revenue collection context. As the Supreme Court observed last term, when addressing the issue of equitable tolling in tax refund disputes, "[t]he nature and potential magnitude of the administrative problem suggest that Congress decided to pay the price of occasional unfairness in individual cases (penalizing a taxpayer whose claim is unavoidably delayed) in order to maintain a more workable tax enforcement system." *United States v. Brockamp,* 519 U.S. 347, 117 S.Ct. 849, 852, 136 L.Ed.2d 818 (1997).

Although the Supreme Court has left open the question of whether the doctrine of equitable estoppel can ever be applied against the government, *see Heckler v. Community Health Services, Inc.,* 467 U.S. 51,

60, 104 S.Ct. 2218, 81 L.Ed.2d 42 (1984), it is clear that " 'the party raising the defense must have reasonably relied on some 'affirmative misconduct' attributable to the sovereign.' " *United States v. Javier Angueira,* 951 F.2d 12, 16 (1st Cir.1991) (quoting *Ven–Fuel,* 758 F.2d at 761) (quoting *Akbarin,* 669 F.2d at 842). *See also Hofstetter v. Commissioner of Internal Revenue,* 98 T.C. 695, 700, 1992 WL 145273 (1992) ("Estoppel is applied against the Commissioner 'with utmost caution and restraint.' ") (quoting *Estate of Emerson v. Commissioner,* 67 T.C. 612, 617, 1977 WL 3636 (1977)). Even viewing the facts in the light most favorable to Harrison, the alleged IRS actions through its unidentified employee do not rise to the level of affirmative misconduct.[4] Accordingly, I find that Harrison's estoppel argument also fails on the merits even if the evidence he sought to adduce is considered.

## V

Because I find that the Form 1040 was filed too late to be dischargeable under 11 U.S.C. § 523(a)(1)(B)(ii), and that there is no equitable relief available for this lack of timeliness, I do not reach the question of whether the delinquent form qualified as a tax return for purposes of § 523(a)(1)(B)(i).

## VI

For the reasons stated more fully above, I AFFIRM the decision of the bankruptcy court.

---

3. For example, I note that Harrison's trial testimony effectively foreclosed a claim of reliance on the alleged statement that mailing was the equivalent of filing as the reason he filed his bankruptcy petition on May 25, 1994. This much is evident from Harrison's testimony at the trial where he admitted that he did not know why his petition was filed on that day. (Tr., at 26.)

4. Harrison relies on *Commissioner of Revenue v. BayBank Middlesex,* 421 Mass. 736, 739–40, 659 N.E.2d 1186 (1996), for the proposition that tax authorities must abide by their own rules and are estopped from arguing a policy contrary to these rules. *BayBank Middlesex,* however, is distin-

guishable from the present case because in *BayBank Middlesex* the Massachusetts Tax Commissioner had issued an official instruction sheet that directed banks for over forty years. *See id.* at 740, 659 N.E.2d 1186. In the present case, Harrison alleges that he was told by an unidentified IRS employee to file his Form 1040 in the mail. This sort of verbal, informal instruction by an unnamed subordinate does not have the same effect as an industry-wide instruction sheet, authorized by the agency itself. Accordingly, the reasons for holding the Massachusetts Commissioner to his official rules have no application to the present situation.