<head>

<title>USCA1 Opinion</title>

<style type="text/css" media="screen, projection, print">

<!--

@import url(/css/dflt_styles.css);

-->

</style>

</head>

<body>

                United States Court of Appeals
                    For the First Circuit

No. 99-1564

          DIANA C. WESTOVER, a/k/a DIANA C. BINDLOSS,

                          Petitioner,
                                 
                               v.

                JANET RENO, ATTORNEY GENERAL OF
                      THE UNITED STATES,

                          Respondent.

             PETITION FOR REVIEW OF AN ORDER OF THE
                 BOARD OF IMMIGRATION APPEALS

                             Before

                    Torruella, Chief Judge,
              Boudin and Lynch, Circuit Judges.
                                
                                
                                
 M. Ronald Gould, with whom Justin Gould was on brief, for
appellant.
 John S. Hogan, Attorney, Office of Immigration Litigation,
with whom David W. Ogden, Acting Assistant Attorney General, and
Karen Fletcher Tortenson, Assistant Director, were on brief, for
respondent.

February 9, 2000

        LYNCH, Circuit Judge.  Diana Westover is a native of
Tanzania who married her American fianc after removal proceedings
against her commenced in 1992.  Westover has remained in the United
States for the past eight years while proceedings against her have
been pending.  She seeks review of a Board of Immigration Appeals
(BIA) final order of removal.  In issuing the order, the BIA upheld
the decision of the Immigration Judge finding Westover removable
and denying her applications for the discretionary relief of
adjustment of status and voluntary departure.  Certain actions by
the INS in this case raise concerns, but in the end those actions
are not relevant to the legitimate basis for the removal order,
which we affirm.   
        Westover attacks both the finding that she is removable
and the denial of her application for adjustment of status.  
Westover argues (1) that her deportation proceedings should be
voided because they were the result of an illegal search and
because her warrantless arrest violated the Fourth and Fifth
Amendments of the United States Constitution and violated
Immigration and Naturalization Service regulations; (2) that the
BIA relied on impermissible factors in affirming the denial of her
application for adjustment of status; (3) that the INS should have
been estopped from charging her as deportable and instituting
removal proceedings against her; (4) that the IJ erred in failing
to adjudicate her Form I-601 Application for Waiver; (5) that the
INS improperly charged her with being an "overstay," and (6) that
the BIA's decision to affirm the finding of deportability is not
supported by substantial evidence and the BIA erred in affirming
the denial of her application for adjustment of status.  For the
reasons stated below, we affirm the order of the BIA.
                              I
        The facts are taken from the proceedings before the IJ.  
Westover is forty-one years old and is a native of Tanzania and a
citizen of the United Kingdom.  She has resided in the United
States almost continuously since 1987.  On March 5, 1992, Westover
acquired a six month, non-immigrant visitor visa from United States
Customs Inspector Jay Labier at the Port of Entry in West
Berkshire, Vermont.  Westover's then current visa had not yet
expired, but she wanted to extend it.  Because her old visa had not
yet expired, Westover left the United States for a period of
approximately ten minutes so that she could return and apply for a
new visa.  Westover told Labier that she intended to stay in the
United States for three to four weeks while she and her fianc
awaited the finalization of his divorce so that they could get
married.  After consulting with superiors, Labier issued Westover
a new visa.   
        Two months later, on May 7, 1992, Vermont State Police,
accompanied by INS agents, conducted a search of Westover's
fianc's home.  Westover also lived there.  The search revealed
approximately 300 marijuana plants being grown in the home.  
Westover was never charged by the police with any crime.  
Westover's fianc was arrested, but charges against him were later
dropped when the search was found to have violated the Fourth
Amendment.  At the time of the search, Westover was arrested by INS
agent David Boocock, and a different agent, Agent Maskell, began
investigating her status.  At this time she requested a hearing
before an immigration judge to determine her removability.  From
her fianc's home, Westover was transported to the Vermont State
Police barracks, and eventually the police transferred her to INS
custody.  Westover was questioned at Border Patrol Headquarters by
agent Boocock.  According to Boocock, she told him that she had no
intention of ever leaving the United States, and she withdrew her
request for a hearing.
        After the questioning by Boocock, the INS issued Westover
a Show Cause order, charging her with deportability under then 8
U.S.C.  1251(a)(1)(A) on two separate grounds.  First, Westover
was charged with being excludable at entry pursuant to 8 U.S.C.
1182(a)(6)(C)(i) as an alien who by fraud or willful
misrepresentation procured a visa or entry into the United States.  
Second, based upon the allegations in the first charge, Westover
was charged under 8 U.S.C.  1182(a)(7)(A)(i) as an alien not in
possession of a valid, unexpired visa or entry document.  Later,
during her removal proceedings and after her visa had expired, the
INS additionally charged her under then 8 U.S.C.  1251(a)(1)(B)
for overstaying her visitor visa.  Westover requested relief in the
form of adjustment of status under 8 U.S.C.  1255 and, in the
alternative, voluntary departure under 8 U.S.C.  1254(e).
        Westover testified at her hearing that she had overstayed
visas on at least three other occasions.  She also admitted to
working in the United States without authorization for most of the
time that she had been here, and she admitted to her failure to pay
federal income taxes on her income.  Westover gave somewhat
conflicting testimony regarding what she told the border agents at
the time of her last entry.  She denied telling Agent Labier that
she intended to marry or reside in the United States, and she
testified that she said nothing regarding where she intended to
reside after marrying her fianc.  She also testified, however,
that she informed the agents that she and her fianc would leave
the United States, and that they would get married and go to
Canada.  Westover also gave ambiguous and somewhat conflicting
testimony with regard to what her intentions were upon reentry and
where she and her fianc intended to reside.  She claimed that she
and her husband intended to go to the United Kingdom or to Canada,
but she also said they intended to buy a boat and travel.  While
her husband put his house in Vermont up for sale, suggesting the
two intended to leave the country, he did so only after she was
placed in removal proceedings, and he continued to own a home in
New York.  It appears that Westover intended to stay in the United
States until her fianc's divorce became final, yet finalization of
the divorce had already been pending almost a year when Westover
reentered, and it was not certain at the time of her reentry when
the divorce would become final.  Westover provided the IJ with
affidavits from members of her family, but they gave little
indication of where Westover intended to reside.
        After the hearing, the IJ determined that Westover had no
intention of leaving the United States when she procured the March
5, 1992, visa and found her deportable based upon all three
charges.
        The IJ denied both requests for discretionary relief.  In
doing so, the IJ noted that Westover's testimony regarding her
knowledge of the marijuana growing operation in her fianc's home
was not credible; that she gave false information on her
application for adjustment of status; that she had worked without
authorization in the United States and had paid no federal income
tax; and that she had previously overstayed her visitor visas.  In
light of her "prior adverse immigration record and her lack of
complete candor," the IJ denied both forms of relief "as a matter
of discretion."
        The BIA upheld both the IJ's finding of deportability and
his denial of discretionary relief.  In reviewing the deportability
finding, the BIA excluded from consideration the testimony of both
Inspector Labier and Agent Boocock (in response to Westover's
challenge to the use of evidence that was the result of the illegal
search).  Westover also claimed before the BIA that the INS's
charging her with overstaying constituted a denial of due process,
but the BIA, relying on its own precedent, dismissed this claim.
                              II
A. Constitutional and Statutory Violations
        Westover alleges that her removal proceedings have been
tainted by constitutional and statutory violations in two senses;
that the proceedings themselves are invalid and that certain
evidence must, in any event, be excluded.  Even though the search
of her fianc's home violated the Fourth Amendment, this is not a
basis upon which she can attack the validity of her removal
proceedings.  The Supreme Court has held that an alien cannot
challenge the INS's discovery of her illegal status or the
institution of removal proceedings that resulted from an illegal
search.  See INS v. Lopez-Mendoza, 468 U.S. 1032, 1040 (1984).  An
alien may be able to challenge the use of illegally seized
evidence, but only if the seizure constituted an "egregious"
violation of the Fourth Amendment.  See id. at 1050-51 (plurality
opinion).  In this case the BIA affirmed the decision of the IJ
without relying on the testimony of the two INS officers.  Thus,
we need not decide whether statements made at the time of
Westover's arrest were admissible.
        Westover also claims that INS officers violated federal
statutes and regulations in arresting and detaining her.  First,
she claims that she was not informed of the reason for her arrest
or of her removal hearing rights, as required by 8 C.F.R.
287.3(c) when an alien is arrested without a warrant.  The record
reveals, however, that Westover was so informed.  
        Second, Westover claims that her warrantless arrest
violated 8 U.S.C.  1357(a)(2), which states that an INS officer
"shall have power without warrant . . . to arrest any alien in the
United States, if he has reason to believe that the alien so
arrested is in the United States [unlawfully] and is likely to
escape before a warrant can be obtained for his arrest."  The
government has not responded to this argument, and it appears from
the record that Westover's claim is most likely valid.  While INS
agents may have had probable cause to arrest Westover by the time
they took her into custody, there is no evidence that Westover was
likely to escape before a warrant could be obtained for her arrest.  
We do not condone the agents' conduct, which appears from the
record to be in direct violation of the statute.  Given that Fourth
Amendment violations do not constitute grounds for invalidating
removal proceedings, though, this mere statutory argument on
similar grounds cannot give Westover a basis for relief.  See
Katris v. INS, 562 F.2d 866, 869 (2d Cir. 1977) (arrest in
violation of 8 U.S.C.  1357(a)(2) does not void subsequent
deportation hearing).  Whether evidence obtained from a statutorily
invalid arrest should be admitted in an alien's removal hearing is
a more difficult question, cf. Navia-Duran v. INS, 568 F.2d 803,
809-811 & n.7 (1st Cir. 1977) (excluding coerced confession but not
deciding whether INS agent had violated 8 U.S.C.  1357(a)(2) or
the effect any such violation might have), but the BIA did not
consider any evidence from the time of Westover's arrest.
B. Effect of 8 U.S.C.  1255(i)
        Aliens who, inter alia, have worked in the United States
without authorization, are in unlawful immigration status, have
failed to maintain lawful status, or have violated the terms of a
non-immigrant visa are not eligible for adjustment of status.  See
8 U.S.C.  1255(c).  Under 8 U.S.C.  1255(i), however, aliens
ineligible for adjustment of status by virtue of  1255(c) because
they have committed certain transgressions can still apply for
adjustment of status.  See 8 U.S.C.  1255(i).  They must pay a
$1,000 application fee and meet other procedural requirements.  See
id.
        Although she never submitted an application under
1255(i), Westover argues that the terms of the section precluded
the IJ and the BIA from considering her various transgressions of
the immigration laws (specifically, those listed in  1255(c)) when
deciding on her application for adjustment of status.  Her argument
fails for three reasons.
        First, Congress enacted  1255(i) in 1994, and the
section went into effect on October 1, 1994.  See Act of Aug. 26,
1994, Pub. L. 103-317,  506(c), 108 Stat. 1724, 1765, as amended
by Act of Nov. 26, 1997, Pub. L. 105-119,  111(b), 111 Stat. 2440,
2458, set out as note under 8 U.S.C.  1182.  INS regulations
specify that  1255(i) does not apply to applications for
adjustment of status filed before October 1, 1994.  See 8 C.F.R.
245.10(e).  Westover filed her application for adjustment of
status on December 17, 1992.  Thus,  1255(i) does not apply to her
application.
        Second, before an alien can be granted the discretionary
relief of adjustment of status, she must be prima facie eligible to
apply for adjustment of status.  The provisions in  1255(i) render
eligible an alien who would otherwise be prima facie ineligible to
apply for adjustment of status.  These provisions simply do not
preclude the IJ or BIA from considering transgressions of the
immigration laws in making the ultimate discretionary determination
whether to grant adjustment of status.  
        Third, although Westover asserts that the IJ contravened
the dictates of  1255(i) when adjudicating her application for
adjustment of status, she did not object at her hearing, and she
did not raise the issue on appeal before the BIA.  Having remained
silent, she has waived any challenge to the BIA's consideration of
the factors listed in  1255(i).  See Bernal-Vallejo v. INS, 195
F.3d 56, 64 (1st Cir. 1999).
C. Estoppel Claim
        Westover claims that the INS should be estopped from
charging her with being excludable at entry and being present
without a valid visa, as she acquired her visa upon instructions
from the INS.  This argument is without merit.  The INS did not
instruct Westover that if she intended to stay permanently in the
United States, she should apply for a new visa.  Instead, the INS
instructed Westover that she could leave the country and apply for
a new six-month visa.  She did this.  Nothing in the record
suggests that the INS knew, at the time it gave her this advice,
that she was intending to violate immigration laws or that she had
previously violated immigration laws.  Later she was charged with
obtaining this visa with the intent to stay indefinitely.  Estoppel
requires showing that the government engaged in "affirmative
misconduct" that caused the petitioning individual to act in a way
she otherwise would not have.  See Akbarin v. INS, 669 F.2d 839,
842-43 (1st Cir. 1982).  Westover has failed to meet either of
these requirements.  There is no evidence of government misconduct.
D. Failure to Adjudicate Form I-601
        Westover claims that the BIA erred in not adjudicating
her form I-601 (waiver of grounds of excludability).  Form I-601
allows an alien who would otherwise be ineligible for adjustment of
status to have the grounds of her ineligibility waived.  See 8
C.F.R.  212.7(a)(1)(ii).  Since the IJ denied Westover's
application for adjustment of status as a matter of discretion,
there was no need to adjudicate the form I-601.
E. The Overstay Charge
        Westover's visa (which the INS considers to have been
fraudulently obtained) was valid when the show cause order was
issued but lapsed during her removal proceedings.  The INS then
added the charge of being an overstay to her show cause order.  
Westover asserts that being charged with overstaying in this
context is a violation of due process.  The BIA dismissed this
claim based upon its holding, twenty-five years ago, in Matter of
Halabi, 15 I. & N. Dec. 105 (1974).  In that case, the BIA held
that it was permissible for the INS to charge the alien with
overstaying his visa when his visa had expired because he had
remained in the United States to defend himself in removal
proceedings initially brought on other grounds.  See id. at 106.  
The BIA noted that the alien had not attempted to obtain an
extension from the INS.  See id.  The Chairman of the BIA
dissented, finding that this practice violated due process.  See
id. at 107 (Roberts, Chairman, dissenting).
        If an alien leaves the country before her visa expires
and during her deportation proceedings, she may well be unable to
defend against the original charges.  If she stays, however, she
becomes removable as a result of overstaying.  It may be that one
could successfully challenge the original charges through counsel
without personally appearing.  The government's position, and the
BIA's position in Halabi, is that the alien should apply for an
extension of her visa from the INS District Director.  However, as
the Halabi dissent noted, see id. at 107-08, applying for an
extension is likely futile.  In this case, the INS considers
Westover to be without a valid visa.  There is no reason to believe
that the District Director would grant Westover an extension on
what the INS considers an invalid visa.  Furthermore, in order to
apply for an extension, an alien must have maintained her status
and must present a valid visa.  See 8 C.F.R.  214.1(a)(3), (c)(4).  
The charges lodged against Westover demonstrate that the INS does
not consider Westover capable of meeting these requirements.  See
Halabi, 15 I. & N. Dec. at 107-08 (Roberts, Chairman, dissenting).
        We pause to note that the practice of charging aliens
with overstaying when they remain in the United States to defend
themselves in removal proceedings could cause us some concern on
given facts.  "[T]he Fifth Amendment entitles aliens to due process
of law in deportation proceedings.  At the core of these due
process rights is . . . a meaningful opportunity to be heard."  
Choeum v. INS, 129 F.3d 29, 38 (1st Cir. 1997) (internal quotation
marks and citation omitted); see also Lozada v. INS, 857 F.2d 10,
13 (1st Cir. 1988) (due process violated if alien is prevented from
reasonably presenting her case).   
        The BIA upheld the IJ's findings regarding the original
charges that Westover was excludable at entry and was present
without a valid visa, and we affirm its order of removal on these
grounds, without deciding the overstay issue.
F. The BIA's Decision to Uphold the IJ's Finding of Deportability  
        We review the BIA's decision in this case under the
substantial evidence standard.  See INS v. Elias-Zacarias, 502 U.S.
478, 481 (1992); Cordero-Trejo v. INS, 40 F.3d 482, 488 (1st Cir.
1994).  Under this standard, we will reverse the BIA's decision
only if the evidence presented would compel us to find for the
petitioner.  See Elias-Zacarias, 502 U.S. at 483-84.  As the
recitation of the facts earlier in this opinion shows, the evidence
in this case was sufficient for the BIA to uphold the findings of
the IJ.
G. Denial of Discretionary Relief
        Westover also claims that the BIA erred in denying her
application for adjustment of status.  Because she was placed into
removal proceedings before April 1, 1997, and her final order of
removal came after October 30, 1996, Westover's appeal is governed
by  309(c)(4)(E) of the Illegal Immigration Reform and Immigrant
Responsibility Act of 1996 (IIRIRA), Pub. L. 104-208, 110 Stat.
3009-546, a transitional rule regarding judicial review.  See Prado
v. Reno, 198 F.3d 286, 288 n.2 (1st Cir. 1999); Kalaw v. INS, 133
F.3d 1147, 1149-50 (9th Cir. 1997); IIRIRA  309(c)(4), set out as
note under 8 U.S.C.  1101.  Under these transitional rules, we
lack jurisdiction to review the BIA's discretionary denial of
Westover's application for adjustment of status.  See Bernal-
Vallejo, 195 F.3d at 61-63.
                             III
        We affirm the BIA's order of removal on the basis of the
two original charges lodged by the INS.  

</body>

</html>