# United States Court of Appeals
## For the First Circuit

Nos. 17-1264,
    17-1316

DONALD THOMAS SCHOLZ,

Plaintiff/Counterclaim-Defendant, Appellant/Cross-Appellee,

v.

BARRY GOUDREAU,

Defendant/Counterclaim-Plaintiff, Appellee/Cross-Appellant.

APPEALS FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Denise J. Casper, U.S. District Judge]

Before

Torruella, Lynch, and Kayatta,
Circuit Judges.

Susan E. Stenger, with whom Lawrence G. Green, Laura Lee Mittelman, and Burns & Levinson LLP were on brief, for appellant/cross-appellee.
Jeffrey S. Baker, with whom Baker and Associates, P.C., Daniel P. Tarlow, Copani, Tarlow & Cranney, LLC, David M. Given, and Phillips, Erlewine, Given & Carlin LLP were on brief, for appellee/cross appellant.

August 21, 2018

**TORRUELLA**, **Circuit Judge**.  Donald Thomas Scholz, a member of the rock band BOSTON, sued former BOSTON guitarist Barry Goudreau for various trademark infringement and breach of contract claims relating to impermissible references that Goudreau had allegedly made regarding his former association with the band. Goudreau counterclaimed with his own breach of contract and abuse of process claims.  After the district court granted in part and denied in part both parties' respective motions for summary judgment, the extant claims proceeded to trial.  The jury found in favor of the respective defendant on each of the remaining claims. Scholz and Goudreau now cross-appeal the district court's summary judgment findings, evidentiary rulings, and denials of the various motions detailed in this opinion.  For the reasons stated below, we affirm the district court and deny both parties' appeals.

## I.  Background

### A. Factual Background

In 1976, Scholz and Goudreau were members of the rock-band BOSTON, along with Fran Sheehan, Sib Hashian and Brad Delp. Goudreau played the guitar in the band's first two albums and performed with the band from approximately 1976 to 1979.  After Goudreau left BOSTON in 1981, he and the remaining members of the band executed a settlement agreement (the "Settlement Agreement") in 1983, pursuant to which Goudreau would receive a one-fifth share

-2-

of the band's royalties for the first two BOSTON albums. The Settlement Agreement also stated that Goudreau "shall have no interest, right nor title to the name of 'BOSTON', nor to any recording royalties, performing rights royalties, performance income, copyright interests or payments, or financial interest therein, except as provided herein." The agreement clarified that:

> D. The Name "BOSTON": The parties hereto expressly agree that Goudreau may use the term "Formerly of Boston" for and in conjunction with any biographical usage with respect to future performances, but, except to this extent, Goudreau shall have no other interest, right or title to the name "BOSTON." Without limiting the foregoing, Goudreau may not use the name "BOSTON" for or in conjunction with any advertisement or promotion.

From 2004 to 2006, Goudreau and Sib Hashian began to play music informally with Ernie Boch Jr. ("Boch"), an amateur musician and New England area car mogul. Eventually, the three started performing together in a band that they later called Ernie and the Automatics ("EATA"). On February 6, 2009, Boch, Goudreau, and other members of EATA signed a Confirmatory Recording Artist Agreement (the "Confirmatory Agreement") in which the signatories granted Boch the right in perpetuity to use, and authorize others to use, their names and biographical information for advertising and promotion of EATA. By signing the agreement, the EATA members warranted that use of their names and biographical information would not infringe upon the rights of any third parties.

Boch created and managed EATA's website, which described Goudreau as an "original" member of the band BOSTON. In 2009, Boch posted on YouTube an EATA "pop-up"[1] music video produced by Boch's friend, Ian Barret, to promote EATA's new album. The "pop-up" video displayed lines of text that would momentarily appear at the bottom of the screen overlaying EATA's music video. Some of the pop-up messages read as follows:

1. "Guitarist Barry Goudreau and drummer 'Sib' Hashian are 'former' original members of the band 'Boston'."

2. "Boston's' first record is the biggest selling debut in history with 17 million units sold."

3. "The original cover art for 'Boston's' first record was a head of Boston lettuce, not the guitar spaceship."

4. "Brian met Barry when he joined 'Orion the Hunter', Barry's first band project after 'Boston.'"

5. "Brian, Barry, and Tim would later form 'RTZ' with 'Boston' lead singer, Brad Delp."

In addition, Boch advertised EATA in magazines, in which he referred to Goudreau as an original and founding member of BOSTON. The cellophane wrapping of EATA's 2009 CD album entitled "Low Expectations" bore a sticker reading: "Featuring Barry Goudreau . . . former original member[] of the multi-platinum selling band 'BOSTON.'" When EATA held a CD release party on February 7, 2009,

---

[1] As referred to in Boch's testimony and Goudreau's appellate brief.

-4-

the promotional material read in part: "Barry Goudreau and Sib Hashian, two former original members of the multi-platinum selling band BOSTON have reunited."

In addition to EATA's advertisements, Goudreau's musical performance in "The Best of Boston series" was promoted as featuring "original founding Boston member Barry Goudreau." Additionally, promotional materials for Goudreau's shows at the Cannery Casino Hotel referred to Goudreau as "BOSTON's former 'lead' guitarist and an original 'BOSTON' member." Moreover, Goudreau was described as "the lead guitarist rock legend from the band BOSTON" in performances with the James Montgomery Blues Band.

**B. Procedural History**

On April 17, 2013, Scholz filed suit against Goudreau in the District of Massachusetts, alleging, as is relevant to this appeal, federal trademark infringement in violation of 15 U.S.C. § 1114(1), breach of contract, and breach of the implied covenant of good faith and fair dealing. Goudreau filed an answer on May 24, 2013, and asserted various counterclaims including breach of contract, breach of implied covenant of good faith and fair dealing, and abuse of process, all under Massachusetts law. Goudreau also sought a declaratory judgment that using language other than "formerly of Boston" does not violate Scholz's trademark rights. Scholz subsequently filed a first amended complaint

-5-

("FAC") on May 21, 2014, adding claims of contributory trademark infringement in violation of 15 U.S.C. § 1114(1), and vicarious trademark infringement in violation of 15 U.S.C. § 1114(1).

On February 17, 2015, Scholz and Goudreau each filed a motion for summary judgment. As it pertained to Goudreau's motion, the district court granted summary judgment to Goudreau with respect to all of Scholz's claims except for those of contributory and various trademark infringement as they related to Goudreau's membership in EATA. Notably, the district court found that there was a genuine issue of material fact regarding whether Goudreau had the ability to directly control or monitor EATA's promotions of Goudreau. As to Scholz's motion, the district court granted Scholz summary judgment on Goudreau's claim for declaratory judgment, as well as the abuse of process claim, finding that Scholz did not use the litigation process to obtain an improper end. But the district court denied Scholz's motion for summary judgment as to Goudreau's other two counterclaims relevant to this appeal.

The district court held a jury trial on the remaining claims in October and November of 2016. Following the fifth day of the seven-day trial, Scholz filed a motion to amend his FAC to reinstate his breach of contract claim so as to conform it to the evidence presented at trial. The district court denied this motion

the next day. On November 1, 2016, the jury rejected all of the claims and counterclaims that it was presented. On the verdict form for Goudreau's breach of contract counterclaim, the jury answered "NO" to the question of whether Goudreau "perform[ed] his obligations under the contract, or was excused from performance because of [Scholz's] conduct."

On November 8, 2016, Scholz again moved to reinstate and for entry of judgment on his breach of contract claim in light of the jury's finding that Goudreau had not performed his obligations under the Settlement Agreement. On December 15, 2016, Goudreau filed a motion for attorney's fees pursuant to 15 U.S.C. § 1117(a). On February 16, 2017, the district court denied both motions. Both parties appealed in the following month.

## II.  The Appeals

The parties each raise three claims of error they believe the district court to have made during the course of the underlying litigation. We address each party's arguments, beginning with those made by Scholz.

### A. Scholz's Appeal

The gravamen of Scholz's claims is that his breach of contract claim should have survived and prevailed. Specifically, he contends that the district court erroneously dismissed his breach of contract claim on summary judgment, improperly denied

his motions to reinstate this claim, and erred in denying his motion for entry of judgment on that claim consistent with the jury's verdict. We discuss each argument in turn.

## 1. Summary Judgment

The Settlement Agreement states that it is "governed by and construed and enforced in accordance with the laws of the [Commonwealth] of Massachusetts." Under Massachusetts law, a claim for breach of contract requires the plaintiff to show the existence of a valid and binding contract, that the defendant breached the contract's terms, and that the plaintiff suffered damages as a result of that breach. Brooks v. AIG SunAmerica Life Assurance, Co., 480 F.3d 579, 586 (1st Cir. 2007).

The parties agree that the Settlement Agreement was a valid and binding contract. Scholz asserted that Goudreau breached that contract in two ways. First, Scholz asserted that the advertisements and promotions for Goudreau's subsequent musical performances were "not limited to 'formerly of Boston' but instead use[d] such terms as 'original founding member' or 'Lead Guitarist Rock Legend from the Band BOSTON.'" Second, he claimed that any reference to BOSTON in advertisements or promotions of Goudreau's performances violated the contract, regardless of whether or not the advertisement or promotion was limited to the phrase "formerly of Boston."

-8-

The district court disposed of this second argument by pointing out that the Settlement Agreement allowed Goudreau to reference BOSTON when using the term "'formerly of Boston' for and in conjunction with any biographical usage with respect to future performances." Further, the next sentence of the relevant contract provision -- "[w]ithout limiting the foregoing, Goudreau may not use the name 'BOSTON' for or in conjunction with any advertisement or promotion" -- did not annihilate Goudreau's limited right to use the band name. Scholz does not dispute the district court's denial of his second claim, and we therefore need not discuss it further.

Scholz does argue, however, that Goudreau's motion for summary judgment should have been denied because of the reasonable inference that Goudreau encouraged others to promote him as an "original" or "founding" member of BOSTON, in breach of the contract. For support, Scholz points to the district court's denial of Goudreau's counterclaim for a declaratory judgment that Goudreau could promote himself in a manner other than "formerly of Boston"; Goudreau's admission in his counterclaim that he caused others to hold him out as an "original member of BOSTON"; and the EATA Confirmatory Agreement, in which Goudreau gave Boch the right to use and authorize others to use Goudreau's name and biographical information. The district court disagreed, finding that Scholz

failed to show that Goudreau himself, rather than a third party, breached the contract.

We review the district court's grant of summary judgment de novo. Ocasio-Hernández v. Fortuño-Burset, 777 F.3d 1, 4 (1st Cir. 2015). In so reviewing, we must "tak[e] the facts and all reasonable inferences therefrom in the light most favorable to [the non-moving party]." Aponte-Rosario v. Acevedo-Vilá, 617 F.3d 1, 6 (1st Cir. 2010).

After a careful review, we discern no error in the district court's ruling granting summary judgment to Goudreau on Scholz's breach of contract claim. The district court explained the details of each offending instance cited by Scholz relaying the facts underlying each allegation, each of which showed that Goudreau did not instruct those responsible for the promotions to use any language other than that which was permitted by the Settlement Agreement. While Scholz did show that some of Goudreau's performances were advertised using descriptors not in conformance with the Settlement Agreement, Scholz did not show that Goudreau had any role in drafting, approving, or promulgating such language. Similarly, on appeal, Scholz does not direct us to any record evidence from which we could find that Goudreau was responsible -- either directly or indirectly -- for any promotion or advertisement using language other than "formerly of Boston."

Accordingly, we do not find any genuine issue of material fact as to whether Goudreau breached the Settlement Agreement. See Fed. R. Civ. P. 56(c)(1) ("A party asserting that a fact . . . is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record.").

Scholz makes much of Goudreau's statement in his counterclaim that he "made sure that all venues, managers, and other[s] involved referred to [him] . . . using the truthful and accurate descriptive designations of formerly of BOSTON or as an original member of BOSTON." But, as we have stated, Scholz pointed to no specific instance in which Goudreau did, at any point, direct anyone to bill him as an "original member" of BOSTON. Nor does Goudreau's counterclaim for declaratory relief, and the district court's denial thereof, show that Goudreau did diverge from the language of the contract.

Scholz states that the Confirmatory Agreement created a genuine issue for the jury as to whether Goudreau encouraged and authorized Boch to use descriptions beyond those which were allowed by the Settlement Agreement. But Boch testified in his deposition that Goudreau told him to limit his description to "former member" of BOSTON. Boch further commented that he added the word "original" on his own, despite Goudreau's instructions otherwise. Scholz does not dispute this on appeal, instead arguing that

-11-

Goudreau's failure to stop Boch from promoting Goudreau as otherwise constitutes a breach. But, given Boch's deposition testimony that Goudreau did request such limitations on EATA's promotional material, and Scholz's failure to provide any evidence that Goudreau did not so request, there was no evidence in the record from which the district court could have drawn the inference to which Scholz claims that he was entitled.

Scholz adds that the district court erred as a matter of law in allowing Goudreau's motion for summary judgment as to his claim for breach of the implied covenant of good faith and fair dealing. As an argument that piggybacks completely upon his arguments pertaining to his breach of contract claim, this too must fail. Accordingly, as Scholz failed to point to any facts at the summary judgment stage to raise a genuine issue as to whether Goudreau breached the Settlement Agreement, we find that the district court did not err in awarding Goudreau summary judgment on Scholz's breach of contract claim or his claim for breach of the implied covenant of good faith and fair dealing. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986).

### 2. Motions to Reinstate

Scholz twice moved to amend his FAC, pursuant to Fed. R. Civ. P. 15(b)(2), to reinstate his breach of contract claim. Scholz now claims that the district court's denial of these motions

was in error.  We review both denials for abuse of discretion. See Campana v. Eller, 755 F.2d 212, 215 (1st Cir. 1985).

Scholz filed his first motion to amend on October 30, 2016, claiming that Goudreau impliedly consented to reinstating Scholz's breach of contract claim.  "When an issue not raised by the pleadings is tried by the parties' express or implied consent, it must be treated in all respects as if raised in the pleadings. A party may move -- at any time, even after judgment -- to amend and to raise an unpleaded issue."  Fed. R. Civ. P. 15(b)(2). "Consent to the trial of an issue may be implied if, during trial, a party acquiesces in the introduction of evidence which is relevant only to that issue."  DCPB, Inc. v. City of Lebanon, 957 F.2d 913, 917 (1st Cir. 1992) (emphasis added) (citing Campana, 755 F.2d at 215).  One manner of acquiescing may be by failing to object to the introduction of such evidence.  See id.

As he did before the district court, Scholz again advances the argument that Goudreau impliedly consented to litigating Scholz's breach of contract claim by failing to object to his counsel's questions to Goudreau and Boch about whether Goudreau granted Boch actual authority -- as opposed to whether Boch had the apparent authority -- to handle the advertising and promotion of EATA.  Scholz says that these questions, and his counsel's related questions about whether Goudreau granted Boch

-13-

authority by signing the EATA Confirmatory Agreement were relevant only to a breach of contract claim, and were irrelevant to Scholz's claims for contributory or vicarious trademark infringement.

We disagree. We do not find that counsel's questions, and the evidence adduced therefrom, were relevant only to a potential breach of contract claim such that Goudreau could have known that a breach of contract claim was permeating the jury trial. See Rodríguez v. Doral Mortg. Corp., 57 F.3d 1168, 1172 (1st Cir. 1995) ("The truth-seeking function of our adversarial system of justice is disserved when the boundaries of a suit remain ill-defined . . . ."); Cole v. Layrite Prods. Co., 439 F.2d 958, 961 (9th Cir. 1971). Nor do we find that the questions were irrelevant to Scholz's vicarious trademark infringement claims.

First, the record reflects that Scholz's counsel did not make clear his intent to draw a meaningful distinction between the legal concepts of "actual" and "apparent" authority at trial. In fact, he did not even use the words "actual" or "apparent" authority during his examinations of Goudreau and Boch. Cf. Sony Corp. of Am. v. Universal City Studios, Inc., 464 U.S. 417, 435 n.17 (1984) (noting that "the lines between direct infringement, contributory infringement, and vicarious liability are not clearly drawn," and that an infringer may include "one who authorizes the use of a copyrighted work without actual authority from the

-14-

copyright owner" (quoting Universal City Studios, Inc. v. Sony Corp of Am., 480 F. Supp. 429, 457-58 (C.D. Cal. 1979))). Second, even if the intent of the counsel's line of questioning was clear, "[a]pparent . . . authority results from conduct by the principal which causes a third person reasonably to believe that a particular person . . . has authority to enter into negotiations or to make representations as his agent." Linkage Corp. v. Trs. of Bos. Univ., 425 Mass. 1, 16 (1997) (alteration in original) (internal quotation marks and citation omitted). Thus, Scholz's counsel's questions about whether Goudreau gave Boch the right to promote EATA, inasmuch as they were relevant to whether third persons reasonably believed that Boch had Goudreau's permission to use Goudreau's affiliation with BOSTON in EATA's promotions (i.e. whether Boch had "apparent authority"), were not exclusively relevant to Boch's "actual authority." See id.; cf. Binkley Co. v. E. Tank, Inc., 831 F.2d 333, 338 (1st Cir. 1987) (finding that a seller's agent had apparent authority to execute a provision for termination of a contract in light of the agent's actual authority to negotiate prices and times of delivery). Accordingly, we cannot conclude that Goudreau consented to the reinstatement of Scholz's breach of contract claim by acquiescing to the line of questions regarding the promotion of EATA. See DCPB, Inc. v. City of Lebanon, supra.

Finally, we need only look to the district court's memorandum accompanying its summary judgment order to illustrate that the questions asked by Scholz's counsel were relevant to the claims already presented to the jury. When discussing Scholz's contributory trademark infringement claim, the district court found there to be a genuine issue of material fact as to whether Goudreau had "sufficient ability to direct and control the promotions of EATA." Whether Goudreau gave Boch the authority to use his name and biographical information in these promotions, or alternatively whether Boch used this information without Goudreau's permission, weighs directly on this question. The district court further stated in its memorandum that the ultimate question for the jury on Scholz's vicarious liability claim was whether it was reasonable to infer from Goudreau's actions that Boch or Tom Baggott, a promoter for EATA, acted with Goudreau's authority. Questions pertaining to Goudreau's interactions with Boch were also relevant to this issue.

Because these questions were relevant to issues already before the jury, we find that they did not provide Goudreau adequate notice that a breach of contract claim was being litigated. See DCPB, 957 F.2d at 917 ("The introduction of evidence directly relevant to a pleaded issue cannot be the basis for a founded claim that the opposing party should have realized

that a new issue was infiltrating the case."); see also Grand Light & Supply Co. v. Honeywell, Inc., 771 F.2d 672, 680 (2d Cir. 1985) ("The purpose of Rule 15(b) is . . . not to extend the pleadings to introduce issues inferentially suggested . . . ." (quoting Browning Debenture Holders' Committee v. DASA Corp., 560 F.2d 1078, 1086 (2d Cir. 1977))). And, we would think it unjust to allow Scholz to reinstate his breach of contract claim without sufficient notice. Cf. In re Fustolo, No. 17-1984, 2018 WL 3424797, at *9 (1st Cir. 2018) (finding that plaintiff's failure to object to a line of questioning "pertinent to other claims already presented" could not "be construed to imply consent"). Thus, we conclude that the district court did not abuse its discretion when it denied Scholz's first motion to amend his FAC after the fifth day of trial.

Scholz's second motion to amend his FAC by reinstating his claim was tucked into Scholz's post-jury-verdict motion for entry of judgment on his breach of contract claim consistent with the jury's findings. In his motion for entry of judgment, Scholz did not point to any additional evidence, aside from the jury's finding that Goudreau failed to perform his obligations under the 1983 Settlement Agreement, from which the district court could have found Goudreau's express or implied consent to litigate Scholz's breach of contract claim. As explained in our discussion

-17-

below, this jury finding does not change the calculus, and we are therefore led to the same result as to the second motion to amend.

### 3. **Motion for Entry of Judgment**

Scholz avers that the jury's verdict for Goudreau's breach of contract counterclaim, in which the jury found that Goudreau did not "perform his obligations under the contract" and was not excused from performance by Scholz's conduct, is the functional equivalent of a jury finding that Goudreau breached the Settlement Agreement. Therefore, Scholz says, the district court erred in denying his motion for entry of judgment on his breach of contract claim consistent with this finding.

Contrary to Scholz's assertion, the jury verdict on Goudreau's counterclaim does not equate to a finding that Scholz proved his claim of breach of contract. See Acumed LLC v. Advanced Surgical Servs., 561 F.3d 199, 219 (3d Cir. 2009) ("[T]he jury's verdict against appellant on its breach of contract counterclaim does not prove the contrapositive."). Although the jury did find that Goudreau did not "perform his obligations under the contract," Scholz's claim for breach of contract required that Scholz show more than this. See Brooks, 480 F.3d at 586 (noting that a breach of contract claim requires a showing of the existence of a valid and binding contract, that the defendant breached the contract's terms, and that the plaintiff suffered damages as a result of that

-18-

breach). The evidence presented at trial did not compel the jury to conclude that Scholz suffered damages as a result of Goudreau's failure to perform his contractual obligations. Thus, the jury's finding does not satisfy the third element of a breach of contract claim. And, because of this, the district court correctly denied Scholz's second motion to amend his FAC to reinstate a breach of contract claim and Scholz's request that the district court enter judgment in his favor.

At best, Scholz's true ask is that the court alter or amend the judgment pursuant to Fed. R. Civ. P. 59(e). But, the cases that Scholz cites all stand for the proposition that the district court should rarely overturn a jury's verdict.[2] We don't disagree with the principle announced in those cases, though they are inapposite to this case -- where there was no jury verdict on Scholz's breach of contract claim. Further, a "motion [to alter or amend a judgment] must establish either clear error of law or point to newly discovered evidence of sufficient consequence to make a difference." Franchina v. City of Providence, 881 F.3d 32, 56 (1st Cir. 2018) (quotation omitted). Scholz fails to establish

---

[2] See Velázquez v. Figueroa-Gómez, 996 F.2d 425, 427 (1st Cir. 1993) ("[A] jury's verdict on the facts should only be overturned in the most compelling circumstances."); see also Robinson v. Watts Detective Agency, Inc., 685 F.2d 729, 742 (1st Cir. 1982); Cardiaq Valve Techs. V. Neovasc, Inc., 2016 U.S. Dist. LEXIS 150686, *32 (D. Mass. 2016).

-19-

a clear error of law or point to any sufficiently consequential newly discovered evidence.

For these reasons, we find no abuse of discretion.

## B. Goudreau's Appeal

Having disposed of Scholz's arguments, we turn to the claims of error that Goudreau presents for our review. But be forewarned: his arguments fare no better.

### 1. Abuse of Process

Goudreau first alleges that the district court erred by entering summary judgment in Scholz's favor on Goudreau's abuse of process claim, asserting that there were genuine issues of material fact as to Scholz's motives for bringing the underlying litigation. Goudreau claims that the totality of the circumstances show that Scholz's true motives were to "litigate Goudreau into submission" in order to obtain all royalty and copyright rights to BOSTON's first two albums and to obtain discovery from Goudreau and others to be used in other litigation.

To establish a claim of abuse of process under Massachusetts law, a plaintiff must show that: 1) process was used; 2) for an ulterior or illegitimate purpose; 3) resulting in damage to the plaintiff. Psy-Ed Corp. v. Klein, 459 Mass. 697, 713 (2011) (citing Millennium Equity Holdings, LLC v. Mahlowitz, 456 Mass. 627, 636 (2010)). Process is abusive when it is used "to obtain

-20-

a collateral advantage, not properly involved in the proceeding itself, such as the surrender of property or the payment of money, by the use of the process as a threat or a club." Cohen v. Hurley, 20 Mass. App. Ct. 439, 442 (1985) (quoting W. Page Keeton et al., Prosser and Keeton on the Law of Torts § 121, at 898 (5th ed. 1984)). Furthermore, an abuse of process claim is meant to address claims brought "outside the interests properly pursued in the proceeding." Broadway Mgmt. Servs. Ltd. v. Cullinet Software, Inc., 652 F. Supp. 1501, 1503 (D. Mass. 1987). The bad intentions of a defendant are irrelevant if that defendant "has done nothing more than carry out the process to its authorized conclusion." Cohen, 20 Mass. App. Ct. at 442.

After reviewing the record, we find no error in the district court's holding.[3] Goudreau posits that Scholz's "ulterior" motives were to, using litigation, extract his royalty streams from the first two BOSTON albums. However, Scholz's directly stated in his FAC his motive to obtain all royalty rights to, and copyrights in, BOSTON's first two albums. When a plaintiff

---

[3] Goudreau's argument that Scholz abused the litigation process by making meritless demands for contract rescission is, as Goudreau's counsel conceded at oral argument, a claim better suited as a malicious prosecution claim. See Beecy v. Pucciarelli, 387 Mass. 589 (1982) (finding malicious prosecution when a party brings a suit with no probable cause and acts with improper motive or malice). Evidence from the record supports this observation. But, Goudreau raised no such claim in the district court.

directly states his purpose in his complaint, "even a pure spite motive" does not establish that there was an abuse of process if the process is used "only to accomplish the result for which it was created." Vigeant v. United States, 245 F. App'x 23, 25 (1st Cir. 2007) (quoting Keeton et al., supra, at 897). And, "traditionally, discovery activities have not provided grounds for abuse of process actions in Massachusetts," as the "curtailing [of] discovery activities[] would be inconsistent with the spirit of Mass. R. Civ. P. 26(b)(1)." The Alphas Co., Inc. v. Kilduff, 72 Mass. App. Ct. 104, 115-16 (2008); see also Jones v. Brockton Public Markets, Inc., 369 Mass. 387, 389-90 (1975) (limiting abuse of process claims to writs of attachment, instituting a civil action, and the bringing of criminal charges).

Accordingly, the district court did not err in granting Scholz's summary judgment motion as to Goudreau's abuse of process claim.

## 2. Attorney's Fees

Goudreau next argues that "the district court erred as a matter of law in denying his motion for costs and attorney's fees pursuant to 15 U.S.C. § 1117(a)." "We confine our review to whether the district court has made a mistake of law or incorrectly weighed (or failed to weigh) a factor in its decision." Richardson v. Miller, 279 F.3d 1, 3 (1st Cir. 2002) (citing Foster v. Mydas

-22-

Assoc., Inc., 943 F.2d 139, 143 (1st Cir. 1991)). Absent legal errors, **"**[w]e review the [district] court's determination regarding the reasonableness of the prevailing party's attorney's fee request for 'manifest abuse of discretion.'" Flynn v. AK Peters, Ltd., 377 F.3d 13, 26 (1st Cir. 2004) (citing Poy v. Boutselis, 352 F.3d 479, 488 (1st Cir. 2003)).

The Lanham Act allows for an award of attorney's fees to the prevailing party in a trademark violation case only "in exceptional cases."  15 U.S.C. § 1117(a).  We have not yet considered what makes a case "exceptional" under the Lanham Act in the context of a prevailing defendant.[4] See Ji v. Bose Corp., 626 F.3d 116, 129 (1st Cir. 2010).  But under the Patent Act -- which contains nearly identical language, see 35 U.S.C. § 285 ("The court in exceptional cases may award reasonable attorney fees to the prevailing party.") -- "an 'exceptional' case is one that stands out from others with respect to the substantive strength of a party's litigating position . . . or the unreasonable manner in

---

[4]  We have construed the criteria for an award of attorney's fees under the Lanham Act, in the context of a prevailing plaintiff, to be infringements that were "malicious, fraudulent, deliberate, or willful," or "when equitable considerations justify such awards." See Tamko Roofing Prod., Inc. v. Ideal Roofing, Co., 282 F.3d 23, 31 (1st Cir. 2002) (internal quotation marks omitted).

which the case was litigated." <u>Octane Fitness, LLC</u> v. <u>ICON Health & Fitness, Inc.</u>, 134 S. Ct. 1749, 1755-56 (2014).[5]

The Supreme Court has left it to the district courts to "determine whether a case is 'exceptional' in the case-by-case exercise of their discretion, considering the totality of the circumstances." <u>Id.</u> at 1756. However, in a footnote in <u>Octane Fitness</u>, the Supreme Court listed factors used in another similar provision of the Copyright Act to guide that discretion. <u>Id.</u> at 1756 n.6. This "'nonexclusive' list of 'factors[]' includ[es] 'frivolousness, motivation, objective unreasonableness . . . and the need in particular circumstances to advance considerations of compensation and deterrence.'" <u>Id.</u> (quoting <u>Fogerty</u> v. <u>Fantasy, Inc.</u>, 510 U.S. 517, 534, n.19 (1994)).

Goudreau cries foul, alleging that the district court utilized a more onerous "clear and convincing evidence" standard than the <u>Octane Fitness</u> "preponderance of the evidence" standard.

---

[5] The application of <u>Octane Fitness</u>'s interpretation of § 285 of the Patent Act to § 1117(a) of the Lanham Act is not disputed by the parties; the district court applied <u>Octane Fitness</u> and Scholz does not argue for a different standard. We also note that five other circuits have so far applied <u>Octane Fitness</u> to Lanham Act cases. <u>See</u> <u>Sun Earth</u> v. <u>Sun Earth Solar Power</u>, 839 F.3d 1179, 1180-81 (9th Cir. 2016) (en banc); <u>Baker</u> v. <u>DeShong</u>, 821 F.3d 620, 621-25 (5th Cir. 2016); <u>Georgia-Pacific Consumer Prods. LP</u> v. <u>von Drehle Corp.</u>, 781 F.3d 710, 720-21 (4th Cir. 2015); <u>Slep-Tone Entm't Corp.</u> v. <u>Karaoke Kandy Store, Inc.</u>, 782 F.3d 313, 317-18 (6th Cir. 2015); <u>Fair Wind Sailing, Inc.</u> v. <u>Dempster</u>, 764 F.3d 303, 313-15 (3d Cir. 2014).

Further, he says that the district court only embarked on a cursory review of the Octane Fitness factors. Since the district court found for Goudreau on almost all of Scholz's Lanham Act claims, Goudreau argues that this case was "exceptional." Additionally, Goudreau notes that the district court's refusal to award attorney's fees fails to deter Scholz from bringing future frivolous lawsuits, and that because Goudreau raised an issue of material fact as to Scholz's bad faith in abusing the litigation process, the district court abused its discretion. See Nightingale Home Healthcare v. Anodyne Therapy, 626 F.3d 958, 963-64 (7th Cir. 2010) ("Abuse of process is a prime example of litigating in bad faith.").

We find neither that the district court used the incorrect standard, nor that it abused its discretion. The district court was intimately familiar with the totality of the circumstances in this case, and reasonably found the case not to be an "exceptional" one warranting the sought-after award. In its electronic order denying Goudreau's motion, the district court not only cited the Octane Fitness factors but also thoughtfully analyzed each of those factors. Goudreau's disagreement with the district court's weighting of those factors does not render that analysis "cursory." As for deterrence, the district court properly observed that a judgment on the merits at summary judgment itself

-25-

precludes future litigation on the same set of facts. See B&B Hardware, Inc. v. Hargis Industries, Inc., 135 S. Ct. 1293 (2015) ("This Court has long recognized that the determination of a question directly involved in one action is conclusive as to that question in a second suit." (internal quotation marks and citation omitted)).

Goudreau's argument that he is entitled to attorney's fees because of Scholz's purported abuse of process is equally unavailing. As we have concluded, the district court properly granted summary judgment to Scholz on Goudreau's abuse of process claim. Goudreau has simply failed to prove the exceptionality of his case by a preponderance of the evidence, or any other standard, and we therefore affirm the district court's denial of costs and attorney's fees.

### 3. Evidentiary Ruling

Finally, Goudreau argues that the district court erroneously admitted into evidence at trial the EATA music video with "cartoon-like pop-up text" created by and uploaded onto the internet by Boch's friend, Ian Barrett. According to Goudreau, the video was constitutionally protected non-commercial artistic work comparable to a parody. Therefore, Goudreau argues, it could not form the basis of liability for intellectual property infringement.

Under Rules 401 and 402 of the Federal Rules of Evidence, the court will generally admit evidence that makes a fact more or less probable than it would be otherwise. Fed. R. Evid. 401, 402. But the court, at its discretion, may exclude such relevant evidence if the evidence would confuse or mislead jurors, or if its probative value is outweighed by unfair prejudice. Fed. R. Evid. 403. When previously considering a Lanham Act trademark claim, we have found that certain artistic forms of expression, such as parodies, may be protected speech and thus not subject to trademark infringement liability, notwithstanding the fact that protected speech used another entity's registered trademark for a non-commercial purpose. L.L. Bean, Inc. v. Drake Publishers, Inc., 811 F.2d 26, 31-33 (1st Cir. 1987).

Goudreau asserts that the admission of this video fundamentally prejudiced his case and caused jury confusion as to the significance of the author's usage of the word-mark BOSTON to Scholz's trademark claim. The jury finding that Goudreau did not perform his obligations under the Settlement Agreement, Goudreau argues, proves that admitting the video into evidence "was anything but harmless." As a secondary matter, Goudreau maintains that neither he nor Boch had anything to do with the creation of the "pop-up" text, and that Scholz failed to show that Goudreau had anything to do with it being posted online.

-27-

We review a district court's evidentiary rulings for abuse of discretion, Pagés-Ramírez v. Ramírez-González, 605 F.3d 109, 115 (1st Cir. 2010), but review legal issues within those evidentiary ruling de novo and findings of fact for clear error. Cameron v. Otto Bock Orthopedic Indus., Inc., 43 F.3d 14, 16 (1st Cir. 1994). In light of these standards, we find that the district court's conclusion that the video was a commercial promotional piece was not clearly erroneous, and that the video was not subject to constitutional protection as a matter of law. Accordingly, the district court did not abuse its discretion in admitting the "pop-up" video.

There was plenty of evidence to support the district court's finding that the video served a commercial purpose. First, the music video over which the pop-up text appears was created immediately after EATA released its CD "Low Expectations" in February 2009. The original music video (the version without the pop-up text) was created by Boch to promote that new CD. That original music video itself contains old video footage and sketches of the band BOSTON, and the text in the pop-up messages described two of the band members' ties to BOSTON. Ian Barrett, Boch's friend who created the video, told Boch that he was going to create this pop-up video and post it on the internet, and Boch uploaded it to YouTube on November 2, 2009, soon after the release of "Low

-28-

Expectations."  Given these facts, it was reasonable for the district court to conclude that the pop-up video was created and posted in order to promote EATA's new album.

Further, the district court did not err as a matter of law in concluding that the "pop-up" EATA video was not protected speech in the form of a parody, and that the music video itself was relevant to an issue at trial: whether Goudreau's was liable for contributory or vicarious trademark infringements contained in the video.  Although Goudreau cites L.L. Bean, Inc. for support, the parody described in that case is readily distinguishable from the pop-up video at issue here.  That case involved an article within the "humor" and "parody" page of an adult entertainment monthly periodical that utilized L.L. Bean's trademark along with sexually explicit photos of nude models.  L.L. Bean, Inc., 811 F.2d at 27.  Unlike that article, the pop-up video at issue here is not used solely as a form of artistic expression.  Rather, it uses the trademark to give factual data about band members, and is used to promote the band's album.  This is a far cry from the protected speech in L.L. Bean, Inc.  Cf. Parks v. LaFace Records, 329 F.3d 437, 454 (6th Cir. 2003) ("Crying 'artist' does not confer carte blanche authority to appropriate a [trademarked entity's] name.").

But even were we to assume that this pop-up video was intended to be parody, L.L. Bean, Inc. noted that a parody that "engenders consumer confusion [is] entitled to less protection" since it "implicates the legitimate commercial and consumer protection objectives of trademark law." 811 F.2d at 32 n.3. A "pop-up" video that features two former members of BOSTON, contains text describing Goudreau and drummer Sib Hashian as founding original members of BOSTON, discusses BOSTON's record sales and the artwork on BOSTON's first album cover, and displays old footage of BOSTON, would certainly have the potential to cause consumer confusion.

Goudreau's claim that admission of the video caused the jury confusion is equally unavailing. Goudreau does not show that any jury confusion resulted from the video's introduction as it pertains to Scholz's Lanham Act claims. To the contrary, the jury found in Goudreau's favor as to these claims. While the jury did find that Goudreau did not perform his obligations under the Settlement Agreement, this was in relation to his own breach of contract cross-claim, not Scholz's Lanham Act claims. Any argument that admission of the video would cause the jury to confuse Scholz's trademark infringement claims with Goudreau's breach of contract claims was not argued before the district court and is therefore waived. See Wood v. Millyard, 566 U.S. 463, 470 (2012).

-30-

Even absent such waiver, Goudreau would still fail to establish that it was this pop-up video, and not some other piece of evidence, that caused the jury to make that finding.  Therefore, we find that the district court did not abuse its discretion in admitting the pop-up video at trial.

## III.  Conclusion

Having addressed and rejected all of the parties' claims of error, our work is complete.  For the aforementioned reasons, we affirm the judgment of the district court.

**Affirmed.**