IV. Discussion
A. Motion to Dismiss or Stay the Proceedings Due to Nio
Although Plaintiff's claims are not precisely the same as the claims in Nio , Defendants argue that Plaintiff's complaint should be either dismissed or stayed, pending the District of Columbia's resolution of Nio , pursuant to the first-to-file rule. (#15 at 1-2.)
It is undisputed that Nio was the first-filed action. Turning to the other two factors, the similarity of the parties and the similarity of the issues, other federal district courts have noted that "[t]he first-to-file rule 'does not require strict identity of the parties, but rather substantial similarity.' " Wang , 2018 WL 4441106, at *5, 2018 U.S. Dist. LEXIS 157405, at *14 (quoting Adoma , 711 F. Supp. 2d at 1147 ). Therefore, when a suit is related to a class action like Nio , "the classes, and not the class representatives, are compared." Id. (quoting Ross v. U.S. Bank Nat'l Ass'n , 542 F. Supp. 2d 1014, 1020 (N.D. Cal. 2008) ). Thus, courts will compare the allegations in the plaintiff's complaint with the class definition to determine whether the plaintiff meets the class definition's requirements. See id. If so, the parties will be sufficiently similar under the first-to-file rule. See id. 2018 WL 4441106, at **5-7, 2018 U.S. Dist. LEXIS 157405 at **14-16.
*173 Applying these principles, the Northern District of California concluded in Wang that the Nio class definition applied to the plaintiff, Qi Wang, a Chinese citizen who was part of the MAVNI program and made claims similar to those of Plaintiff here. Id. 2018 WL 4441106, at *2-3, 7, 2018 U.S. Dist. LEXIS 157405 at **6-8, 21. Like members of the Nio class, and Plaintiff in the present case, Wang alleged that although he had enlisted in the Selected Reserve through MAVNI before October 13, 2017, served honorably by participating in at least one Selected Reserve drill period, received an N-426 certifying his honorable service, and submitted a Form N-400 naturalization application to USCIS, the processing of his naturalization application had stalled. Id. 2018 WL 4441106, at *5-6, 2018 U.S. Dist. LEXIS 157405 at **14-16 ; see also Gampala v. Dep't of Homeland Sec. , No. 18-cv-02303-JSC, 2018 WL 4680182, at *3-4, 2018 U.S. Dist. LEXIS 168328, at *10 (N.D. Cal. Sept. 28, 2018) (plaintiff part of the Nio class, as both plaintiff and the Nio class members were experiencing a delay in the adjudication of their naturalization applications due to the enhanced DOD military security screenings).
Parties may be sufficiently similar even "where only one of several defendants in the second filed action is the same as the first filed action[.]" McGlynn v. The Credit Store, Inc. , 234 B.R. 576, 580 (D.R.I. 1998) ; see also Kohn Law Grp., Inc. v. Auto Parts Mfg. Miss., Inc. , 787 F.3d 1237, 1240 (9th Cir. 2015) (citations omitted) ("the first-to-file rule does not require exact identity of the parties"); Intersearch Worldwide, Ltd. v. Intersearch Grp., Inc. , 544 F. Supp. 2d 949, 959 n.6 (E.D. Cal. 2011) (citations omitted) (holding that first-to-file rule can still be "satisfied if some [of] the parties in one matter are also in the other matter, regardless of whether there are additional unmatched parties in one of both matters"); Gampala , 2018 WL 4680182, at **3-4, 2018 U.S. Dist. LEXIS 168328, at **10-11 (different defendants in each case did not alter character of either case because USCIS would be compelled to adjudicate the pending naturalization applications in the event that plaintiffs in either case prevailed).
The parties in the present case are sufficiently similar to the parties in Nio such that the first-to-file rule applies. Plaintiff, like many of the other class members in Nio , along with the plaintiffs in both Wang and Gampala , enlisted in the Selected Reserve through MAVNI before October 13, 2017; served honorably in the U.S. military by participating in at least one Selected Reserve drill period; received an executed Form N-426 certifying his honorable service; submitted an N-400 Application for Naturalization to USCIS; and finally, is having the processing or final adjudication of his naturalization application delayed or denied due to the DOD's enhanced security screenings. (#1 ¶¶ 22, 53, 57-69.) The DHS, USCIS, the DOD, and their officials are named Defendants in both cases. While various other field officers are also named as Defendants here but not in Nio , their presence as Defendants does not affect the character of the present suit. As the Northern District of California explained in Gampala , USCIS would be compelled to adjudicate Plaintiff's naturalization application, regardless of whether he prevailed as a single plaintiff in the present case or as a class member in Nio .
Likewise, it suffices if the issues in two cases are "substantially similar[.]" Dunkin' Donuts Franchised Rests. LLC v. Wometco Donas Inc. , 53 F. Supp. 3d 221, 233 (D. Mass. 2014) (citing Wiley v. Gerber Prods. Co. , 667 F. Supp. 2d 171, 173 n.1 (D. Mass. 2009) ). In order to determine if issues are substantially similar, *174 courts compare the relief sought in plaintiff's complaint and the relief sought in the class action. Pride v. Correa , 719 F.3d 1130, 1134 (9th Cir. 2013). Courts also examine whether the plaintiff's case and the class action turn on similar determinations of fact and seek to resolve similar legal issues. Wang , 2018 WL 4441106, at *6, 2018 U.S. Dist. LEXIS 157405, at **17-18 (citing Cadenasso v. Metro. Life Ins. Co. , No. 13-cv-05491-JST, 2014 U.S. Dist. LEXIS 52740, at *10 (N.D. Cal. Apr. 15, 2014)).
Like the Nio class action members, Wang brought claims under the APA and sought to obtain mandamus, an order equitably estopping the defendants from withholding his naturalization application, and "declaratory, preliminary and permanent injunctive relief to compel and enjoin defendants to comply with their statutory obligations[.]" Id. 2018 WL 4441106, at *5-6, 2018 U.S. Dist. LEXIS 157405 at **16-17. Holding that the issues raised in Wang's complaint were sufficiently similar to the issues raised in Nio , the Northern District of California reasoned that both Wang and the Nio class members had the ultimate end goal, namely, the timely processing of their naturalization applications, and both cases turned on whether the DHS, the DOD, and various agency heads and field officers violated their statutory obligations by imposing additional requirements and holds on their naturalization applications. Id. 2018 WL 4441106, at *6-7, 2018 U.S. Dist. LEXIS 157405 at **17-19 ; see also Hu v. U.S. Dep't of Homeland Sec. , No. 4:17-cv-02363-AGF, 2018 WL 1251911, at *4, 2018 U.S. Dist. LEXIS 39856, at *12 (E.D. Mo. Mar. 12, 2018) (some factual variations among MAVNI class members would not impact "overarching questions" common to the entire class, which were whether the defendants had any authority to implement the stricter background screenings and halt naturalization applications).
Plaintiff and the class members in Nio seek the same relief, and both cases turn on similar determinations of fact and attempt to resolve similar legal issues. Plaintiff does not allege the same exact claims as the Nio class members. He alleges various additional claims, including violation of the "statutory right to naturalize," breach of contract, and equitable estoppel. At base, however, Plaintiff, like the Nio class members and the plaintiffs in Wang, Gampala , and Hu , challenges whether the DOD can implement stricter military security screenings and whether USCIS can hold naturalization applications pending the outcome of those enhanced security screenings. See Wang , 2018 WL 4441106, at *6-7, 2018 U.S. Dist. LEXIS 157405, at **18-19 (although the exact claims differed, "the operative facts, alleged statutory violations, and key legal questions underlying the claims relating to the MAVNI naturalization process in this case and Nio are essentially the same, and thus the two suits substantially overlap"); Gampala , 2018 WL 4680182, at *5, 2018 U.S. Dist. LEXIS 168328, at *13 (the "core" of the plaintiff's requested relief was the same as the Nio class). Contra McGlynn , 234 B.R. at 581 (declining to apply the first-to-file rule and denying defendants' motion to transfer or stay the action when the issues presented in the first case were not necessarily dispositive of those in the other).
While Plaintiff maintains he is not sufficiently similar to the MAVNI enlistees in Nio because he is a medical MAVNI, and the Nio lawsuit appears to involve language MAVNIs, who are subject to different background checks than he is, (#20 at 4), Defendants accurately point out that "the parties in Nio explicitly agreed that the Nio class included 'DTP medical and language Selected Reserve MAVNI soldiers.'
*175 " (#26 at 2) (emphasis added) (quoting Reply to Opposition to Defendants' Motion to Dismiss or Stay at 2, Nio , No. 17-cv-0998 (ESH).) More importantly, Plaintiff fails to explain how his classification as a medical MAVNI in any way affects the relief that he is seeking, the determinations of fact required in his case, or the legal issues his case seeks to resolve. Accordingly, the issues both cases raise are "substantially similar" such that the first-to-file rule applies.
The Court concludes that staying Plaintiff's claims for mandamus (Count I); violations of the APA (Count II); constitutional injury pursuant to the Fifth Amendment (Count III); deprivation of the statutory right to naturalize (Count IV); equitable estoppel (Count VI); declaratory relief (Count VII); and preliminary and permanent injunctive relief (Count VIII) is the appropriate remedy. Staying these claims is consistent with Northern District of California's decisions in Wang, 2018 WL 4441106, 2018 U.S. Dist. LEXIS 157405, Gampala , 2018 WL 4680182, 2018 U.S. Dist. LEXIS 168328 and Hu , 2018 WL 1251911, at **2-3, 4-5, 2018 U.S. Dist. LEXIS 39856, at **6-7, 12 (denying the defendants' motion to dismiss, but staying the case pending resolution of Nio , when the plaintiff/MAVNI recruit alleged that defendants violated the APA by unlawfully withholding the completion of his naturalization application in violation of his procedural due process rights).
Because both the present case and Nio will turn on similar determinations of fact in deciding whether Defendants violated any statutory or constitutional obligations by imposing additional requirements and putting holds on the plaintiffs' naturalization applications, staying these claims will also alleviate the First Circuit's concerns of "wasted resources" and "the possibility of conflicting judgments[.]" See TPM , 91 F.3d at 4. Plaintiff fails to demonstrate any prejudice staying these claims would cause. Contrary to Plaintiff's assertion that Nio is "proceeding at a snail's pace[,]" without any "practical relief" in sight (#20 at 12), the Nio parties have filed cross motions for summary judgment, on which briefing is believed to have concluded in early 2019. See Defendants' Reply in Support of Cross Motion for Summary Judgment, Nio , No. 17-cv-0998 (ESH). While these cross-motions may not necessarily result in a decision on the merits, they show that Nio is progressing. See Gampala , 2018 WL 4680182, at *5-6, 2018 U.S. Dist. LEXIS 168328, at *16 ("because Nio has been pending longer, it may well proceed more quickly"). Contra Pride , 719 F.3d at 1137 (refusing to stay case when related class action had already been litigated for twelve years).
While Plaintiff's claims listed above (Counts I-IV and VI-VIII) are already encompassed by the Nio class action litigation, Plaintiff also alleges the DOD Defendants have "insisted" he become a "stateless person" and renounce his Indian citizenship before his naturalization application proceeds. (#1 ¶ 79.) Plaintiff maintains that, if he were to do this, he would no longer have a valid passport, and his current H1B Visa would be voided, rendering him an unauthorized immigrant and potentially putting him at risk for removal from the United States. (#1 ¶¶ 79, 81, 88.)
These allegations regarding the renunciation of Plaintiff's native citizenship are not directly before the Nio court. They turn on different determinations of fact and seek to resolve different legal issues from those raised by the Nio class action.[7] The Northern District of California addressed *176 this issue in Wang . Like Plaintiff, Wang alleged that the DOD sought to have him renounce his Chinese citizenship, which would have left him in a position of statelessness if his naturalization application was never adjudicated. Wang , 2018 WL 4441106, at *7, 2018 U.S. Dist. LEXIS 157405, at *20. Wang asked the court to equitably estop the DOD from making him renounce his Chinese citizenship and relinquish his Chinese passport until he was naturalized as a United States citizen. Id. In allowing Wang's claim relating to renouncing his native citizenship to proceed, the court reasoned that, "[w]hile there [was] some contextual overlap between [the] issue and Nio ," Wang was still making a "discrete, individual" claim for relief. Id. ; see also Pride , 719 F.3d at 1137 (a "discrete, individual claim" for relief could not be delayed simply because a pending class action sought "systemic reform relating to the same general subject matter"); Crawford v. Bell , 599 F.2d 890, 891 (9th Cir. 1979) (inappropriate to dismiss portions of a complaint raising issues not addressed in the related class action).
The Court sees no reason not to adopt the sound reasoning of the Northern District of California in Wang , especially given the severe consequences Plaintiff may face, if his allegations regarding his Indian citizenship are proven true. The claim related to the alleged demand that Plaintiff renounce his Indian citizenship shall be allowed to proceed.
B. Defendants' Motion to Dismiss Plaintiffs' Statutory Right to Naturalize, Breach of Contract, and Equitable Estoppel Claims Pursuant to Rule 12(b)(1) and/or 12(b)(6)
Defendants argue that Plaintiff's claims for violation of the statutory right to naturalize, breach of contract, and equitable estoppel should be dismissed pursuant to Rule 12(b)(1) and 12(b)(6). (#15 at 11-16.)
1. Violation of the "Statutory Right to Naturalize" (Count IV)
While Plaintiff makes a claim pursuant to the APA (Count I) and a claim for constitutional injury pursuant to the Fifth Amendment (Count III), he also makes a separate claim (Count IV), that "Defendants' interference with, and failure to adjudicate" his naturalization application is a violation of the INA, APA, and the Constitution. (#1 ¶ 103.) Plaintiff alleges that "there is no other relief available" to him other than the Court's ordering the DHS and USCIS to "do their duty and adjudicate [his naturalization] application" and ordering the DOD "to cease their interference." (#1 ¶ 104.)
Defendants respond by correctly pointing out that, in addition to Count IV's overlap with Count I (alleged violation of the APA) and Count III (alleged constitutional violations), 8 U.S.C. § 1440 does not explicitly state that a MAVNI's naturalization application must be adjudicated within a particular period of time. (#15 at 16.) However, taking all the factual allegations in Plaintiff's complaint "as true and drawing all reasonable inferences in his favor," Plaintiff appears to be taking a broader approach in also arguing that Defendants violated the INA, in addition to the APA and the Constitution, by requiring the enhanced security screenings and holding his naturalization application until they are all completed. Regardless of whether Defendants' actions are characterized as INA, APA, or constitutional violations, or as a *177 combination of all three, and notwithstanding the fact that Count IV repeats various allegations already in Counts I and III, the Nio court is already considering whether Defendants have the statutory and/or constitutional authority to implement the screenings and place the holds. Therefore, Count IV, the alleged violation of Plaintiff's "statutory right to naturalize," is not appropriate for dismissal under Rule 12(b)(1) or 12(b)(6). Rather, it will be stayed consistent with the other federal courts' decisions in Wang , Hu , and Gampala , 2018 WL 4680182, at **1, 2018 U.S. Dist. LEXIS 168328, at **2-3 (staying case where the plaintiff made the same arguments under the INA, APA, and the Constitution).
2. Breach of Contract (Count V)
Plaintiff's breach of contract claim, not encompassed in the Nio class action litigation, alleges that, by creating "unlawful hurdles" to his naturalization, the DOD has caused the United States to breach his enlistment contract. (#1 ¶ 24.) He seeks "specific enforcement" of the enlistment contract, including the DHS' "timely processing of his naturalization application ... in accordance with the law"; "the cessation of all interference and non-cooperation with the naturalization application process" by the DOD; "naturalization upon successful completion of the naturalization process"; and his "commissioning as a Captain" in the United States Army Reserve upon naturalization. (#1 ¶27.) Plaintiff also seeks money damages, specifically "the pay differential between an Army Captain and an enlisted Specialist Fourth Class" over the term of his service, "with a top limit of $ 10,000." (#1 ¶28.)
Courts generally apply common law principles to determine whether a military enlistment contract has been breached. Qualls v. Rumsfeld , 357 F. Supp. 2d 274, 279-80 (D.D.C. 2005) (citations omitted). In order to prevail on a breach of contract claim in Massachusetts, a plaintiff must show "the existence of a valid and binding contract, that the defendant breached the contract's terms, and the plaintiff suffered damages as a result of the breach." Scholz v. Goudreau , 901 F.3d 37 (1st Cir. 2018) (citing Brooks v. AIG SunAm. Life Assurance Co. , 480 F.3d 579, 586 (1st Cir. 2007) ); see also Qualls , 357 F. Supp. 2d at 282 (citation omitted) (stating that the plaintiff must allege "the existence of a valid and enforceable contract between the plaintiff and defendant, the obligation of defendant thereunder, a violation by defendant, and damages resulting to plaintiff from the breach").[8]
To establish a breach, plaintiffs "must do more than allege, in conclusory fashion, that the defendant breached the contract[.]" Brooks , 480 F.3d at 586. In order to survive a motion to dismiss, the plaintiff must describe, with " 'substantial certainty,' the specific contractual promise the defendant failed to keep." Id. (quoting Buck v. Am. Airlines, Inc. , 476 F.3d 29, 38 (1st Cir. 2007) (plaintiffs must, at a minimum, "explain what obligations were imposed on each of the parties by the alleged contract"), and Doyle v. Hasbro, Inc. , 103 F.3d 186, 195 (1st Cir. 1996) ("[c]onclusory *178 statements" that defendant and its executives "failed to meet their contractual requirement ... are insufficient to satisfy the pleading requirements")). It is well-settled that where, as here, a contract is made between the government and an individual, the law in effect at the time of the contract becomes part of the contract. U.S. v. Larionoff , 431 U.S. 864, 877, 97 S.Ct. 2150, 53 L.Ed.2d 48 (1977) ; Caola v. U.S. , 404 F. Supp. 1101, 1106 (D. Conn. 1975) (citing Fed. Crop Ins. Corp. v. Merrill , 332 U.S. 380, 384-85, 68 S.Ct. 1, 92 L.Ed. 10 (1947) ).
Plaintiff fails to state a claim for breach of contract for several reasons. First, and most importantly, Plaintiff fails to cite, let alone describe with "substantial certainty," any specific contractual promise the Defendants failed to keep pursuant to his enlistment contract. While Plaintiff maintains that the portion of his enlistment contract, requiring him "to apply for U.S. citizenship as soon as the Army ... certified [his] honorable service," implied that the Army wanted him to become a citizen and was "contractually bound not to thwart those efforts[,]" (#20 at 5), Plaintiff cannot cite any specific portion of the enlistment contract which required Defendants to adjudicate his naturalization application within any specific time, provide him with a pay raise, or promote him from a Specialist Fourth Class to a Captain. Although 8 U.S.C. § 1440 invites those without permanent legal residence serving in the armed forces to apply for naturalization, without regard to age, period of residence in the United States, or length of military service, it does not specifically guarantee citizenship, a timeline for adjudication, pay raises, or promotion in the armed forces. Similarly, while 8 U.S.C. § 1571(b), cited in Plaintiff's notice of erratum (#23 at 1-2), states that "[i]t is the sense of Congress that the processing of an immigration benefit application should be completed not later than 180 days after the initial filing of the application," 8 U.S.C. § 1571(b), "Congress stopped short of mandating a time limit" for adjudication. Da Cruz v. Riordan , No. 11-10818-DPW, 2011 WL 1793381, at *2, 2011 U.S. Dist. LEXIS 54085, at *5 (D. Mass. May 11, 2011) (quoting Aziz v. Chadbourne , No. 07-11806-GAO, 2007 WL 3024010, at *2 n. 2, 2007 U.S. Dist. LEXIS 76002, at *2 n.2 (D. Mass. Oct. 15, 2007) ). Accordingly, Plaintiff's breach of contract claim will be dismissed pursuant to Rule 12(b)(6). See Tremblay v. Marsh , 750 F.2d 3, 5 (1st Cir. 1984) (plaintiff failed to demonstrate sufficient showing of likelihood of success on the merits on his breach of contract claim when "plain terms" of his military contract contained nothing about his being promoted); Martelon v. Walker , 568 F. Supp. 672, 674 (D. Co. 1983) (granting summary judgment for the defendants, when the plaintiff did not cite, and the court did not find, any provisions of plaintiff's military contract guaranteeing his assignment to a specific military unit, or limiting the defendants' ability to reassign him when necessary).
There are other reasons why Plaintiff's breach of contract claim must be dismissed. First, it is well-settled that, in order to be liable for breach of contract, one must be a party to that contract or, alternatively, be responsible for the alleged breach. See, e. g. , Scholz , 901 F.3d at 44 (defendant did not breach contract, when he himself did not direct, and had no role in, the advertising activity allegedly constituting the breach). Defendants correctly point out that the DOD, the DHS, and USCIS are not parties to Plaintiff's enlistment contract. While Plaintiff may be able to make an argument that the DOD, the DHS, and USCIS have aided in the alleged breach by failing to adjudicate his naturalization application, this argument is tenuous at best, given that Plaintiff fails to *179 cite the "specific contractual promise" related to his allegations.
Furthermore, to the extent that Plaintiff is asking for monetary damages not to exceed $ 10,000, "money damages are not an available remedy for the government's breach of an enlistment contract." Jablon v. U.S. , 657 F.2d 1064, 1066-67 (9th Cir. 1981). While courts generally apply common law principles to determine whether a military enlistment contract has been breached and can provide remedies such as release, courts "have no authority" to order the government to pay damages for a breach of a military enlistment contract, because those in the military are paid under statutory, rather than contract, principles. Id. at 1067 ; see also Bell v. U.S. , 366 U.S. 393, 401, 81 S.Ct. 1230, 6 L.Ed.2d 365 (1961) (emphasis added) (the common law has "no place in the area of military pay "). Relatedly, district courts lack the authority to promote MAVNIs in Plaintiff's position to active duty status to entitle them to a higher pay grade. See, e.g. , Jablon , 657 F.2d at 1067 n.4 (citing Covington v. Anderson , 487 F.2d 660 (9th Cir. 1973) (noting that the court could not order the Air Force to call plaintiff to active duty status so he would be entitled to variable incentive pay)). Plaintiff's breach of contract claim (Count V) will be dismissed in its entirety.
3. Equitable Estoppel (Count VI)
Finally, Plaintiff alleges in his complaint that the DOD should be "equitably estopped from instructing" the DHS and USCIS to withhold adjudication of his naturalization application, because they made "factual representations concerning enlistment and naturalization" to him, on which he has "reasonably relied." (#1 ¶¶ 112-14.) Defendants respond by arguing that "[t]he Supreme Court has been clear" that naturalization through equitable estoppel is precluded. (#15 at 12 (citing INS v. Pangilinan , 486 U.S. 875, 883-84, 108 S.Ct. 2210, 100 L.Ed.2d 882 (1988) (noting that federal courts do not have the power to confer citizenship absent a specific authorizing statute)).) Defendants further argue that, even if federal courts did have the authority to naturalize citizens through equitable estoppel, the remedy of estoppel is not available against the government under these circumstances. (#15 at 13.) Specifically, the decision to require MAVNIs to undergo enhanced military security screenings before their N-400 applications can be processed "is not and cannot possibly be construed as 'affirmative misconduct[.]' " (#15 at 13 (quoting Frillz, Inc. v. Lader , 104 F.3d 515, 518 (1st Cir. 1997) ).)
Defendants' argument is flawed in several respects. Although Plaintiff does, in fact, seek "naturalization upon successful completion of the naturalization application process[,]" (#1 ¶¶ 27), Plaintiff is also asking for specific, additional forms of relief. (#1 ¶¶ 25-29.) Like the members of the Nio class action and the individual plaintiffs in Wang, Gampala , and Hu , Plaintiff is asking the Court to equitably estop the DOD from instructing the DHS and USCIS to suspend the processing of his naturalization application pending the results of the DOD's enhanced military security screenings. (#1 ¶¶ 27, 111-14.)
Furthermore, while Defendants accurately point out that, in order to make a claim for estoppel against the federal government, a party must, "at a minimum[,]" show that the government engaged in "affirmative misconduct" on which he or she "reasonably relied," Frillz , 104 F.3d at 518 (quoting U.S. v. Ven-Fuel, Inc. , 758 F.2d 741, 761 (1st Cir. 1985) ), what constitutes affirmative misconduct "remains elusive." U.S. SEC v. Nothern , 400 F. Supp. 2d 362, 366 (D. Mass. 2005)
*180 (citing Schweiker v. Hansen , 450 U.S. 785, 101 S.Ct. 1468, 67 L.Ed.2d 685 (1981) (Marshall, J., dissenting)). The First Circuit has held that the determination of whether an equitable estoppel claim can be made is a fact-specific one. Akbarin v. INS , 669 F.2d 839, 845 (1st Cir. 1982) ("only in light of precise factual findings as to what actually took place can a meaningful determination of the legal aspects of [an] estoppel claim be made"); see also INS v. Miranda , 459 U.S. 14, 18, 103 S.Ct. 281, 74 L.Ed.2d 12 (1982) (court unable to say that delay in processing plaintiff's application for permanent residence amounted to affirmative misconduct absent specific evidence that delay was unwarranted).
Here, Plaintiff alleges that the DOD "actively thwarted his naturalization" and alludes to the fact that the Defendants may have engaged in affirmative misconduct because Congress has not authorized them to impose additional requirements for naturalization, other than the FBI and DCII background checks, and the elevated DOD security screenings are not related to any specific security concerns. (#1 ¶¶ 24, 34, 80.) Accepting all the facts set forth in Plaintiff's complaint as true and drawing all reasonable inferences in Plaintiff's favor, Plaintiff has stated a plausible claim for relief. Consistent with other federal courts' decisions in Wang, Gampala , and Hu , Plaintiff's claim for equitable estoppel will be stayed pending the resolution in Nio . See, e.g., Wang , 2018 WL 4441106, at **3, 7, 2018 U.S. Dist. LEXIS 157405, at **8, 21 (staying the plaintiff's specific claim for equitable estoppel as related to the adjudication of his naturalization application due to Nio ).
V. Conclusion
For the reasons stated, the Court grants in part and denies in part Defendants' motion to dismiss the case without prejudice, and grants in part and denies in part a stay of the case pending the resolution of Nio . Plaintiff's claims for mandamus (Count I); violations of the APA (Count II); constitutional injury pursuant to the Fifth Amendment (Count III); deprivation of the statutory right to naturalize (Count IV); equitable estoppel as related to Defendants' withholding the adjudication of his naturalization application (Count VI); declaratory relief (Count VII); and preliminary and permanent injunctive relief (Count VIII) are STAYED, pending the District of Columbia's resolution in Nio , No. 17-cv-0998 (ESH). Plaintiff's claims related to the renunciation of his Indian citizenship are permitted to proceed. Plaintiff's claim for breach of contract (Count V) is DISMISSED without prejudice.

Plaintiff's breach of contract claim, seeking monetary damages and promotion in the Army, in addition to "specific enforcement," is also not encompassed by the Nio class action. However, it will be dismissed pursuant to Rules 12(b)(1) and 12(b)(6) for the reasons discussed infra.

The parties have not briefed the issue of what body of contract law should apply. While many courts have applied general principles of contract law "because of the unique relation between the military and those in the armed services, and the need for a consistent interpretation of enlistment contracts[,]" others have applied the law of the forum, without explaining why. Qualls v. Rumsfeld , 357 F. Supp. 2d 274, 282 n.2 (D.D.C. 2005) (citing Brown v. Dunleavy , 722 F. Supp. 1343, 1349 (E.D. Va. 1989), and Castle v. Caldera , 74 F. Supp. 2d 4, 9 (D.D.C. 1999) ). The Court does not decide this question, because regardless of which contract law is applied in the present case, the outcome is the same. See id.